# JANUARY TERM, 1886.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. WILLIAM A. JOHNSTON, }

The Kansas City, Fort Scott & Gulf Railroad Company v. William Morrison.

BAGGAGE; *Working Tools.* A reasonable quantity of his tools is proper baggage for a mechanic working as a watchmaker and jeweler. What such a reasonable quantity is, is a question for the jury.

*Error from Labette District Court.*

On March 2, 1884, *William Morrison* filed his petition against *The Kansas City, Fort Scott & Gulf Railroad Company*, in the district court of Labette county, to recover $495.12, with interest thereon from February 8, 1884, the alleged value of certain wearing apparel and tools. The petition also averred that the railroad company was a corporation operating a railroad from Fort Scott to Parsons, and was a carrier of passengers between those points on February 8, 1884, and subsequent thereto; that the plaintiff on said date was a watchmaker and jeweler, and that the articles described in the petition constituted the tools necessarily used by him in carrying on his occupation; that on said February 8, the plaintiff was a passenger on the railroad from Fort Scott to Parsons, and at the same time delivered his trunk to the company to be carried as baggage between said points; that plaintiff arrived in Parsons on said day, and at once and on several occasions thereafter demanded of the company a delivery of his baggage, which was refused until February 23d; that the

trunk was delivered on that day, but that the wearing apparel and tools described in the petition were missing from it; and that such loss was caused by the negligence of the company.

On April 12, 1884, the railroad company filed its answer, averring that the property described in the petition, excepting the wearing apparel, was not the usual or ordinary baggage of persons in plaintiff's station in life; was not necessary, proper or convenient for plaintiff's use in traveling, and that defendant is not liable therefor; that the plaintiff did not notify, and the defendant did not know that the trunk contained any such articles, and that the plaintiff did not pay defendant any extra or adequate compensation for transporting such property; that the plaintiff by concealing such knowledge from the defendant was guilty of fraud, and that the defendant would not knowingly have consented to carry the same as baggage, or to have occupied the relation to plaintiff which he, by concealment, endeavored to make it occupy; that defendant's rules forbade the reception of such articles as baggage, of which fact plaintiff had full knowledge; that defendant promptly transported the trunk to its destination, but that plaintiff negligently failed to remove the same from defendant's depot for an unwarrantable length of time; that for several days the trunk was carefully stored and cared for, but that on the night of February 15th the depot was burglarized, and certain property stolen therefrom; that a part of such property was the contents of a trunk claimed by plaintiff; that such burglary and theft were committed notwithstanding defendant's vigilant care; that the depot was securely locked at the time; that if plaintiff lost any property it was stolen by said burglars without fault of defendant, and at a time long after its carriage was ended, and when plaintiff by his own careless act in leaving said property in the depot had changed the relations of the parties, so that the defendant was a gratuitous bailee of the goods. The answer also contained a general denial.

On April 22, 1884, the plaintiff filed a reply admitting that on or about the night of February 15th the depot was burglarized, and plaintiff's property stolen, but specially denying all

averments of negligence on the part of plaintiff in not calling for his trunk, and generally denying all other affirmative averments in the answer.

Trial before the court with a jury, at the June Term, 1884. The jury returned a verdict for plaintiff, and assessed his damages at the sum of $347.67; at the same time the jury returned the following special findings of fact:

"1. When did the trunk of the plaintiff arrive in Parsons? A. By statement of defendant as per record, Feb. 9, 1884.

"2. When did the plaintiff first present his check to and demand his trunk of the railroad company after the arrival of the trunk, and was it before or after the burglary of the depot of the defendant? If so, how long before the burglary? A. 1st. Plaintiff demanded trunk on February 9, 1884. Depot was closed. 2d. February 11, plaintiff again demanded trunk, three days before burglary.

"3. When did such burglary take place? A. Feb. 15, 1884.

"4. Where did the defendant's servants keep the trunk of the plaintiff from the time it arrived in Parsons to the time the depot was burglarized? A. In baggage room.

"5. On the night of the burglary where was the trunk? A. In baggage room.

"6. Was the door of the depot locked, and was it properly closed upon the night of the burglary? A. From evidence we find that depot was closed as usual, but not, in our opinion, as securely as it should be.

"7. If the above question is answered in the negative, in what respect was the depot not locked and properly closed? A. By leaving key in lock of inside door of baggage room.

"8. Would the contents of trunk have been lost if the burglary had not been committed? A. We think not.

"9. Could the defendant have prevented the burglary by the exercise of reasonable care? A. In our opinion, yes.

"10. If the above question is answered in the affirmative, what constitutes the want of reasonable care on the part of defendant? A. By not properly locking door and securing key; also, by having no watchman on premises.

"11. What portion of the property sued for was baggage within the rules laid down by the court? A. The entire contents of trunk.

"12. If you answer the last question that the jewelers' tools

were baggage, for what purpose did the plaintiff carry them with him on journey? A. For the purpose of using them when he found employment."

On June 5, 1884, the railroad company filed its motion for judgment on the special findings of the jury, and also, on the same day, filed a motion for a new trial. Both motions were overruled, and on August 11, 1884, the court rendered judgment in favor of the plaintiff for the sum of $347.67, and also for the costs, taxed at $84.15. *The Railroad Company* excepted, and brings the case here.

*Wallace Pratt,* and *Blair & Perry,* for plaintiff in error.

*Kimball & Osgood,* for defendant in error.

HORTON, C. J.: The evidence introduced upon the trial on the part of plaintiff below shows he purchased a ticket at Fort Scott for Parsons, on February 8, 1884, of the agent of the Kansas City, Fort Scott & Gulf Railroad Company; that he checked his trunk for Parsons a half-hour before the train started; that he arrived at Parsons at 7 o'clock of that day, and on his arrival asked the baggageman at the railroad depot if his baggage had come, and was informed it had not; that on the next day he again inquired of the depot agent about his baggage, and was again told it had not arrived; that on the morning of the 10th he went to the depot, but found no one there; that he then gave his baggage check to the proprietor of the Belmont Hotel, at Parsons, with instructions to have his trunk brought from the depot; that the porter at the Belmont Hotel went to the depot after the trunk in the afternoon of February 11th, and presented to the baggageman the check for the trunk, and asked for it, but was told by him it was not there; that a servant of the Belmont went to the depot on February 12th about 6:25 P. M., for the trunk, but found no one there.

The evidence on the part of the railroad company established that the trunk reached Parsons on February 9, 1884;

that it was apparently in good order when it arrived; that on February 15 the depot was burglarized, and the trunk broken open and robbed.

The jury found that the plaintiff demanded his trunk on February 9, 1884, and again demanded it, on February 11; and these findings are supported by the evidence, because the demand made by the porter of the Belmont on the 11th was the same as if plaintiff had made the demand, as the porter was acting for him and in his interest. Therefore we may omit from this case all discussion of the liability of the defendant below as warehouseman or bailee for hire. If plaintiff demanded his baggage, as testified to, and the company, having the trunk at its depot at Parsons, refused to deliver it, the company is responsible to the owner for its contents, although the trunk was subsequently broken open and robbed without its fault. The liability of the railroad company was coëxtensive with its custody of the trunk, and continued until it was safely delivered into the hands of its owner, if the owner called for and demanded the trunk within a reasonable time after it reached Parsons. All of this was done by the owner. (*A. T. & S. F. Rld. Co. v. Brewer*, 20 Kas. 670; *C. R. I. & Pac. Rld. Co. v. Conklin*, 32 id. 55; Thompson on Carriers, pp. 530–532.)

We think, therefore, that there is only one principal question presented by the record for our determination: That is, whether the tools of plaintiff below are proper baggage for a watchmaker and jeweler. The general rule is, that the implied obligation of a common carrier to carry the baggage of a passenger does not extend beyond ordinary baggage; and it may be said generally that by baggage we are to understand such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunks of passengers, which are not, however, designed for any such use, but for other purposes, such as a sale and the like. (Story on Bailments, 499; Hutchinson on Carriers, § 679.) The decisions on the subject of passengers' baggage turn upon the

question: What articles may baggage consist of? This is a mixed question of law and fact, to be determined by the jury under proper instructions from the court. In *Macrow v. Railway Co.*, 2 L. R., 6 Q. B. 612, the question coming before the court as to what was properly included by the term baggage, the true rule was said by Cockburn, C. J., to be:

"That whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered as personal luggage. This would include, not only all articles of apparel, whether for use or ornament, but also the gun case or the fishing apparatus of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of an analogous character, the use of which is personal to the traveler, and the taking of which has arisen from the fact of his journeying. . . . But merchandise, or furniture, or household goods, would not come within the description of ordinary luggage, unless accepted as such by the carrier."

It is also held by the authorities that a reasonable quantity of his tools is proper baggage for a mechanic. (*Davis v. Railroad Co.*, 10 How. Pr. 330; *Porter v. Hildebrand*, 14 Pa. St. 129.) The cases of *Davis v. Railroad Co.*, supra, and *Porter v. Hildebrand*, supra, are cited by Thompson in his work on Carriers, and also by Hutchinson in his work on the same subject; and are also referred to in other text-books without criticism or other unfavorable comment. (Thompson on Carriers, 513; Hutchinson on Carriers, § 683.)

These cases are quite similar to the one at bar, excepting that the tools in controversy are more valuable. In *Davis v. Railroad Co.*, the contents of the trunk consisted of ordinary wearing apparel, a gun, and a set of harness-maker's tools, worth ten dollars. The plaintiff was a harness-maker by trade, and it was proved that it is usual for those of that trade, in going from place to place, to take their tools with them in their trunks. In *Porter v. Hildebrand*, the plaintiff was a car-

penter, and his trunk contained $45 of clothing and $55 of carpenters' tools. He was moving from Pennsylvania to the state of Ohio, and he delivered his trunk to the owners of a stage to carry it from Pittsburgh to Wooster, Ohio. In that case, the court speaking through Bell, J., said:

"Another question disclosed by the record is, whether a recovery can be had for the value of the carpenters' tools, which the jury have found were a reasonable part of the plaintiff's baggage. . . . The right to carry tools as baggage is unquestionably open to abuse; but in the language of the court in *McGill v. Rowand,* 3 Barr, 451, the correction is to be found in the intelligence and integrity of the jury called to determine under the circumstances of each case. It is, it is said, a common thing for journeymen mechanics to carry in their trunks with clothing, a small and select portion of their tools. To this practice I see no such objection as ought to put this kind of property out of the protection afforded to the necessaries a traveler is compelled by legitimate considerations to transport with his person. Upon this score, the judgment rendered below is, I think, unobjectionable."

The evidence shows that plaintiff below was a watchmaker and jeweler; that he went to Parsons to work at watchmaking; that the tools in his trunk were intended for repairing watches and were necessary for his work; and that they were the tools usually carried by a person of his trade or occupation. The plaintiff is therefore, strictly speaking, a mechanic, and a reasonable quantity of his tools is proper baggage. The term "baggage" was fairly defined to the jury in the instructions of the court, and we do not think any of the instructions were misleading or prejudicial, although as a whole they were unnecessarily prolix. What was a reasonable quantity of tools for plaintiff below to carry, was a question for the jury.

The judgment of the district court must be affirmed.

All the Justices concurring.