## Missouri, Kansas & Texas Railway Company of Texas v. A. E. Meek.

Decided June 12, 1903.

**1.—Carriers—Baggage—Charge on Weight of Evidence.**

Where the action was against a carrier for the value of lost baggage, a charge stating that the undisputed evidence showed that plaintiff did not apply for the trunk at destination within a reasonable time, thus making the defendant's liability depend on negligence, was error as on the weight of evidence where there was testimony on behalf of defendant to the effect that the trunk was delivered on the day of its arrival; and the fact that other portions of the charge distinctly submitted the issue of delivery vel non did not render the error harmless.

**2.—Same—Definition of Baggage—Tools of Trade.**

Plaintiff, a mechanical engineer, was going to a certain town to do work upon engines there, testing and regulating them, and he shipped his tools necessary for that purpose as baggage. In an action for their loss the court charged that if the jury found that the tools were of a character absolutely essential and necessary for plaintiff to carry with him on that particular trip for performing the work in which he was engaged in his vocation at the time, they should determine the issue of whether they were baggage or not in his favor. Held error, as making the personal uses and necessities of plaintiff for that trip the sole test of whether the articles were baggage in a legal sense, and ignoring the question of amount and value, as well as that of whether the articles were such as are carried by passengers of that class upon such a journey according to the habits and customs of such passengers.

**3.—Same—Winter Clothing in Summer.**

Where the journey was a short one and in the summer season, and plaintiff's trunk contained a heavy winter overcoat, as well as a lighter one, it was error for the charge to assume as matter of law that all the clothing came within the definitions of baggage.

**4.—Same—Carrier as Warehouseman—Liability.**

Where, by reason of the passenger's delay in calling for the baggage, the carrier's liability becomes that of a warehouseman only, it is not liable as such for a greater value or quantity of goods as baggage than it was liable for as carrier.

Appeal from the District Court of Harris. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Baker & Lovett,* for appellant.

*Lovejoy & Malevinsky,* for appellee.

GILL, Associate Justice.—This is an action by appellee to recover of appellant the value of a trunk and its contents, consisting of clothing and tools, which had been shipped as baggage over appellant's line of road, and which was alleged to have been lost through the latter's negligence.

The loss of the trunk and its contents was denied by appellant, and its due delivery was averred. It was further contended by appellant that the articles sued for did not properly come within the definition of baggage, and therefore the company could not be held liable therefor.

To this appellee opposed the contention that even if the articles in question were not "baggage," yet the appellant had actual notice of the contents of the trunk, and was therefore liable.

A trial by jury resulted in a verdict and judgment for appellee for $550, from which the defendant company has appealed.

The plaintiff is a designer, constructor and mechanical engineer, and on the 21st of June, 1901, was in the employ of the firm of Weld & Neville as such. On that date he was at Belton, Texas, on business for the firm. From that point he was called to Bartlett, Texas, to test and regulate a steam engine belonging to his employers. He bought a ticket to Bartlett over appellant's line, had the agent check his trunk for the destination named, and received the check therefor. The contents of the trunk, as also their values, according to the allegation and testimony of plaintiff was as follows: "Value of trunk, $28; 1 Thompson steel indicator, $145; 1 Thompson steel indicator with X springs, $85; 1 Willis planimeter, with H. P. attachments, and small Amsler planimeter, $56; 1 boiler inspection and test apparatus and two gauges, $60; 100 feet steel tape, $15; 1 tachometer, two sets of gears, $55; 1 Heath self-timing speed indicator, $20; 1 double dial and alarm stroke counter, $12; 1 draughtsman's diamond point trammel, $8; 1 heavy-weight overcoat, $70; 1 light-weight overcoat, $36; 1 fall suit of clothes, $30; underwear, $50; furnishing goods, $25." Plaintiff explained the uses and purposes of the tools, and testified that they were necessary for his personal use in performing the duties of his vocation at Bartlett in inspecting, testing and repairing the steam engines owned by his employers at Bartlett.

On the issue as to notice to the agent of the company that the trunk contained tools the evidence is conflicting.

As to whether the trunk was delivered to plaintiff at Bartlett, or to some one authorized to receive it for him, the evidence is also conflicting, the plaintiff's evidence being to the effect that he did not call for his trunk at Bartlett until about ten days after it was due to arrive there, and that the company failed to deliver it to him, and the evidence of defendant tending to show that the trunk was delivered to some one on its arrival at Bartlett, and that plaintiff was afterwards seen in possession of it.

We notice first the second assignment, as that alone presents an error which will require a reversal of the judgment. By the second assignment appellant complains of the part of the seventh paragraph of the court's charge which advises the jury that the undisputed evidence shows that the plaintiff did not apply for the trunk at Bartlett within a reasonable time after its arrival at its destination, and that as a consequence he can not in any event hold the defendant as an insurer, but only for loss of the trunk through negligence.

The objection to the charge is that it is upon the weight of the evidence. A defense finding support in defendant's evidence was delivery of the trunk to the plaintiff, and the testimony on behalf of defendant

tended to show that the trunk was delivered on the day of its arrival, and that it was afterwards seen in plaintiff's possession. Plaintiff testified that he did not call for the trunk until about ten days afterwards. It is apparent at a glance that the court declares this statement of plaintiff undisputed, and thus puts the defense of delivery out of the case. Of course we understand it was not so intended by the trial court, for in other portions of the charge the issue of delivery vel non is distinctly submitted, but this does not render the error harmless. The fact remains that the trial court has stated in so many words that the evidence upon an important issue is undisputed.

In view of another trial it is necessary to dispose of certain other questions presented. By the first assignment appellant assails the trial court's definition of "baggage." The trial court charged, in effect, that if the jury believed from the evidence that the tools alleged to have been in the trunk were of a character absolutely necessary and essential for plaintiff to carry with him on the particular trip alleged for performing the work in which he was engaged in his vocation at the time, then they should determine the issue of baggage vel non in favor of plaintiff. Appellant contends that the charge contains two distinct vices.

(1) It made the personal uses and necessities of plaintiff alone for that trip a test of whether the articles alleged to have been lost were baggage in the legal sense of that term, and ignored the question of amount and value.

(2) It was therein assumed as a matter of law that the articles of wearing apparel were not excessive in value and amount and were suitable and necessary for plaintiff on the trip in question and for his reasonable needs when he arrived at his destination.

The first objection to the definition is sound. As to the general definition of the term "baggage" the authorities differ but little, though in the application of the definition to the facts of particular cases the results reached are varied and discordant. The term "baggage," within the rule determining the carrier's liability, is defined to include whatever the passenger takes with him for his own personal use and convenience according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or the ultimate purposes of the journey. Whether or not certain articles are within the term "baggage" is to be determined from the character and length of the journey, its purposes and objects, the owner's station in life and the habits and uses of the class of travelers to which he belongs. 3 Am. and Eng. Enc. of Law, p. 529; Railway Co. v. Fraloff, 100 U. S., 24; see note in Thomp. on Carr., p. 510; 1 Texas Ct. App. Civ. Cases, sec. 613; 2 Texas Ct. App. Civ. Cases, sec. 33, 34; Hutch. on Carr., sec. 688.

Under the rule as stated articles which may be included in the term are not limited to those which are necessary for use during the journey,

but may include articles appropriate or essential for the purposes and ends of the journey. Thus the easel of an artist on a sketching tour, the books of the student, the guns of the hunter, may come within the term. Hutch. on Carr., secs. 686, 687.

Upon the same principle the tools of the artisan have been included. Hutch., supra, sec. 682; see note to Thomp. on Carr., supra; Railway Co. v. Morrison, 34 Kan., 502.

The principle underlying the rule seems to be that the common carrier must know that one making a journey will need certain articles of personal use during the journey and at its end, and is chargeable with notice of the nature, character and value of such as is usually so taken, so far as notice is necessary to fix the liability of the carrier. It appears that the carrier must take notice of the class to which the traveler belongs, and the nature and object of the journey, and this being true it follows as a matter of common knowledge that the carrier will know in a general way the character, quantity and value of the baggage which such travelers generally carry on such a journey. Having this knowledge the carrier will know in advance what should be the measure of its care in the protection of the baggage and the measure of its liability in case of its loss.

It follows logically that whatever articles would not come within the definition of baggage in a particular case, either in their nature, quantity or value, the carrier could not be held to have foreknown, and it would be unjust to hold it to a responsibility which it had not undertaken. Whatever is baggage the carrier impliedly contracts to carry safely; what is not baggage is not within the implied contract.

From what we have said the error of the court becomes apparent. In submitting the issue to the jury the question whether the articles lost were such as are carried by passengers of such a class upon such a journey according to the habits and customs of such passengers was eliminated. Under the definition given by the trial court a mechanic might take as baggage anything in the way of tools and appliances and in any quantity from a steel tape measure to a ponderous piece of machinery, if only it appears to have been necessary to the use of the particular passenger at the end of the particular journey, without reference to value, quantity or any other consideration.

We think the court might charge as matter of law that the tools of a mechanic, if reasonable in quantity and of a character which such mechanics usually carry on such a journey for their personal use at their destination, are baggage, but the question whether in character, quantity and value they come within the definition of baggage are questions which must be determined by the jury. 3 Am. and Eng. Enc. of Law, p. 538; Railway Co. v. Morrison, supra, and authorities cited.

We think the court erred also in assuming as matter of law that all the clothing in the trunk came within the definition of baggage. Considering the fact that the journey was short and the season summer,

the presence of heavy winter clothing presents the issue of whether or not, under all the facts, it came within the definition of baggage.

Inasmuch as, according to plaintiff's own statement of the case, the carrier's liability as insurer ceased before the trunk was demanded, the question whether the alleged lost articles were technically baggage is important only in determining the carrier's liability as bailee if the jury should find the trunk was not delivered. The fact that the shipment ultimately became a mere bailment was an incident of and grew out of the original contract of carriage. No article would be a legitimate part of the bailment which would not have constituted a liability if lost while it retained its character as baggage in transit. The rigor of the rule which held the carrier as an insurer was relaxed because of the delay of the owner in demanding his own. It would be inconsistent and illogical to hold that the carrier was liable for greater value or greater quantity of goods as a warehouseman than as a carrier. Whatever in amount would have been the carrier's liability would be the measure of the warehouseman's liability. For the appellant had the right to suppose that the things constituting the bailment came within the definition of baggage, and called only for such care as such things required, the difference being that while occupying the relation of carrier the liability was that of insurer, whereas in the case as it stands the liability grows out of negligent loss of the goods.

We conclude, therefore, that the contention of appellee to the effect that whatever may have been the liability of the appellant as carrier, the liability as warehouseman (negligence being shown) was unlimited, can not be sustained.

The issues presented by other phases of the case were correctly submitted. For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*