HOUSE, Respondent, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

(138 N. W. 809.)

1. **Carriers—Loss of Baggage—Transportation Within State—Demand of Damages.**

    Pol. Code, Sec. 442, concerning demand of damages on common carriers before bringing suit, does not apply to actions for loss of baggage of passengers while being transported between inter-state points, in view of Sec. 431, limiting application of that chapter to transportation of property solely within the state, and to shipments from points within to other points within the state, involving shipments partly within an adjoining state or states.

2. **Carriers—Connecting Carriers—Liability of Receiving Carrier—Federal Law.**

    Under Act Congress June 29, 1906, known as Carmack Amendment to Act Cong. Feb. 4, 1887, ch. 104, 24 Stat. 379, a carrier receiving baggage for transportation to a point in another state beyond its own lines, makes the connecting line its agent, and is liable for its loss occurring on the connecting line.

3. **Appeal—Error—Reservation of Grounds of Review—What is Baggage.**

    In an action against carrier for loss of baggage, defendant moved to strike out evidence on ground that certain articles did not constitute baggage, but did not object to instructions assuming that the property was baggage, request submission of question whether it was baggage, or ask instructions on that head. **Held**, the only question open to review on appeal was

21—Vol. 30, S. D.

whether such articles could, under any circumstances, constitute baggage.

Corson and Haney, J. J., dissenting.

4.   **Evidence—Judicial Notice—Interstate Commerce Rules and Regulations—"Baggage."**

Courts take judicial notice of the extensive powers given by federal statutes to Interstate Commerce Commission, but will not take judicial notice of the definition by that commission of the term "baggage," nor that it has prescribed what shall be included in that term.

5.   **Carriers—"Baggage," What Constitutes—Question for Jury—Guns—Fishing Tackle—Household Goods.**

Baggage, as regards a carrier's liability, includes whatever passenger takes with him for his personal use and convenience, according to the habits or wants of the particular class to which he belongs, either relative to the immediate necessities or the ultimate purposes of the journey, and are determined from character and length of journey, its purposes and objects, owner's station in life, and the prevailing custom of the class of travelers to which he belongs; and **held**, the guns of a hunter or fishing tackle of a fisherman is baggage of owner while on hunting or fishing expedition; the camping outfit of a camper, including dishes and cuttlery; the tools of a mechanic when going to perform work of his trade; bedding, dishes or cutlery, of one contemplating a short sojourn at a point where he will temporarily keep house, provided it is customery to take such articles in a trunk on such journeys and the articles are reasonably needed therefor; and such household articles aforesaid, are baggage when taken in trunks when owner is making a permanent change of abode, if it is customery to take with him in a trunk such articles; that in all cases such articles must conform in amount of value to condition in life of party taking same. **Held**, further, that it cannot be held that baggage is only such articles as are needed during the journey itself. That in determining what kind of goods carriers must carry and be responsible for, the custom of the carrier, and of his patrons, is looked to, and if his custom is to receive and carry certain property for hire, his calling as carrier of such property becomes established, even though such goods have not been considered by courts as "baggage." **Held**, further, that the question whether certain articles constitute "baggage" is a question for the jury.

Corson and Haney, J. J., dissenting.

(Opinion filed Dec. 3, 1912.   Rehearing granted Jan. 6, 1913.)

Appeal from Circuit Court, Pennington County.   Hon. LEVI McGEE, Judge.

Action by Frank A. House against the Chicago & Northwestern Railway Company, for damages for loss of a trunk and contents as baggage. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Buell & Gardner,* for Appellant.

Defendant's objection that the complaint did not state facts sufficient to constitute a cause of action should have been sustained for the reason that it was necessary for plaintiff to plead and prove a demand in writing upon the defendant for the money damages claimed to have been sustained, as a condition precedent to the right to commence this action. (Assignments of Error 1, Sub. 1 and II, and Sub. 1.)

Chapter 7 of the Revised 1903 Political Code defines and fixes the liability of a common carrier in South Dakota. Sec. 442 of the Revised Political Code, and a part of said Chapter 7, provides, among other things, that if any common carrier shall omit to do any act, matter or thing required by said law to be done, such common carrier shall be liable to the person or persons injured thereby for the amount of damages sustained, etc., provided that in all cases demand in writing upon such common carrier shall be made for the money damages sustained before suit is brought for recovery under said section, and no suit shall be brought until the expiration of thirty days after such demand.

Similar provisions are found with respect to municipalities, and it has been generally held that it is necessary to both plead and prove the demand in writing as a condition precedent to the right to maintain the suit. Thompson v. City of Milwaukee, 34 N. W. 402; Reinig v. City of Buffalo, 6 N. E. 792.

The various articles in the trunk, aggregating $390.05, not being articles intended for the use of the plaintiff while traveling, or for his personal equipment, did not constitute baggage, and the defendant not liable for their loss. (Assignment of Error II, Sub. 7, 8, 9, 10, 11, 24, 27.)

It is not claimed that the defendant company or its agents had the slightest notice or knowledge of the contents of this trunk, and hence had a right to assume that it consisted only of personal baggage.

"Where the passenger delivers to the carrier, without comment, what appears to be personal baggage, the carrier is not put

on inquiry as to the nature of the property, but may assume that it consists only of personal baggage, and is not answerable for articles not coming within the description." Choctaw Ry Co. v. Swirtz, 73 Pac. 941 (Okla.); Ray on Neg. of Imposed Duties, 561; K. C. & P. R. Co. v. State, (Ark.) 46 S. W. 421.

Sec. 1586 of the Revised Civil Code of South Dakota defines baggage as consisting of any articles intended for the use of a passenger while travelling, or for his personal equipment.

It appears from the plaintiff's own testimony that most of the items in controversy were a part of his household goods and furnishings he had been using in Blunt; that in leaving Blunt he was expecting to engage in business at Sioux City, Iowa, and do some California business. The plaintiff's wife testified that the knives and forks, sterling teaspoons, orange spoons, sugar shells, cream ladle, table spoons, pie forks, nut crack and picks, tomato server, olive spoon, cold meat fork, butter knife, berry spoon, carving set, Turkish towels, table cloths, napkins, center pieces, tumbler doilies, chenille curtains, pillow cases, were part of their household furnishings at Blunt, and they were taking them on account of leaving Blunt. It nowhere appears that the plaintiff was starting on a hunting trip, and hence no necessity appears for the taking of the gun or gun case, but simply a matter of moving the gun and gun case from Blunt, South Dakota, to Sioux City, Iowa, where the plaintiff expected to engage in business. None of these articles, so far as the testimony discloses, were intended for the use of the plaintiff while traveling, or for his personal equipment, nor was the taking of same occasioned from the act of the journey, but it was simply a matter of moving them from Blunt, South Dakota, to Sioux City, Iowa. Under these circumstances the articles do not constitute baggage, and the defendant is not liable for their loss as such. Choctaw Ry. Co. v. Swirtz, 73 Pac. (Okla.) 941; Railway Co. v. Baldwin, 113 Tenn. 205; 81 S. W. 599; Missouri R. Co. v. Meek, 75 S. W. 317 (Tex.); Saunders v. Railway Co., 128 Fed. 15; Oakes v. Railway Co., 26 Pac. 230 (Or.); Chicago, etc., R. Co. v. Boyce, 73 Ill. 510; Conolly v. Warren, 106 Mass. 146; Mauritz v. New York Cent. R. Co., 23 Fed. 765; St. Louis R. Co. v. Hardway, 17 Bradw. (Ill.) 321; Mississippi R. Co. v. Kennedy, 41 Miss. 671; Giles v. Fountleroy, 13 Md. 126.

There is no testimony in the record to show that the plaintiff was on a hunting trip, or that the taking of the gun and case was occasioned by the act of this particular journey, or that it was intended for his use while travelling, or for his personal equipment, and hence these articles do not constitute baggage, nor is the defendant liable for their loss as such. The distinction the courts draw as to when articles shall and shall not constitute baggage is well illustrated in the taking of this gun and gun case under the circumstances attending this particular journey.

*Boyd & Soule,* for Respondent.

This action was brought under sections 520 and 521 of the Civil Code, of South Dakota.

The above sections together with Sec. 488 of the Civil Code of South Dakota, are those upon which the right to commence this action was based.

Plaintiff states positively and is uncontradicted, "that he made demand upon the Northwestern Railway Co. at Sioux City, Iowa." (Ab. Fol. 22-27.)

The record shows that plaintiff was told by those in charge of the Northwestern office at Sioux City, "that the trunk was lost in transit, etc." (Ab. Fol. 22.)

The trunk was lost in December, 1908, and suit was not commenced until May, 1910, giving ample time for recovery of trunk or an adjustment of loss by defendant company.

Authorities are submitted by defendant in support of its contention "that it was necessary for plaintiff to plead and prove a demand in writing upon the defendant for the money damages claimed to have been sustained, as a condition precedent, to the right to commence this action." But it will be observed in the cases cited: Thompson v. City of Milwaukee, 34 N. W. 402; Reinig v. City of Buffalo, 6 N. E. 792.

That these cases refer to municipalities purely bodies politic and whose respective charters require notice in writing to be filed, etc.

Were the various articles in the trunk properly held to be baggage by the verdict of the jury and under the law in this case? Sec. 1586 of the Revised Civil Code of South Dakota, defines "baggage or luggage as consisting of any article intended for the use of a passenger while traveling, or for his personal equipment."

It appears from testimony of plaintiff that "only those most valuable and necessary articles, which he could put into a trunk were taken from Blunt" for his personal equipment, convenience, necessity and comfort while he was to remain in Sioux City, Iowa. (Ab. Fol. 50-55.)

It is argued by defendant that "it nowhere appears, that plaintiff was starting on a hunting trip." Plaintiff testified "that he had two bird dogs in the baggage car, and they went through as baggage to Sioux City." (Ab. Fol. 115.)

What would be construed as baggage of one passenger, might not be held to be baggage of another passenger; circumstances, convenience, comfort, class, habits and necessity of the passenger should all be taken into consideration. We quote the commonly accepted rule found in Am. Eng. Encyc. of Law Vol. 3, P. 530, " A traveler is entitled to carry with him as baggage, such articles, having regard to the considerations set forth above, as are fairly and ordinarily necessary, to his personal comfort and convenience both during the journey and for a reasonable period after its end." Hutchings v. Western Etc. R. Co., 25 Ga. 61; Parmelee v. Fischer, 22 Ill. 212; Dunlap v. International Steamboat Co., 98 Mass. 371; New Orleans Etc. R. Co. v. Moore, 40 Miss. 39; Whitmore v. Steamboat Caroline, 20, Mo. 513; Gleason v. Goodrich Trans. Co., 32 Wis. 85; Choctaw Ry. Co. v. Swirtz, 73 Pacific, 941 (Okla.); Chicago Etc. R. Co. v. Collins, 56 Ill. 212; Traloff v. New York Cen. Etc. R. Co., 100 U. S. 24; Vanhorn v. Kermit, 4 Ed. Smith (N. Y.) 453; Davis v. Cayuga Etc. R. Co., 10 How. Pr. (N. Y.) Sup. Ct. 330; 3 Wood on Railroad's, (Minors Ed.) Sec. 401; Merril v. Grinnell, 30 N. Y. 619.

It is contended on part of plaintiff, that it is wholly immaterial whether the defendant company had a continuous or direct line of road from Blunt, South Dakota, via Huron and Alton to Sioux City, Iowa, or not; or whether the Chicago, St. Paul, Minneapolis and Omaha Ry. Co., is owned, or in any manner controlled by the defendant company, so far as the question of liability on the part of the defendant company in this case is concerned.

The attempted defense, "that defendant company delivered said trunk and baggage to the Chicago, St. Paul, Minneapolis and Omaha Ry. Co., at Alton, Iowa, another competent common carrier which was carrying to said Sioux City" should not be sus-

tained, in view of the fact, that such defense is contrary to the
law of Interstate Commerce, and contrary to the most recent de-
cision of the supreme court of the United States upon the ques-
tion, of liability of a railway company, receiving property for
transportation from a point in one state, to a point in another
state.  Atlantic Coast Line Railroad Co., Plff. in err. v. Riverside
Mills, United States Supreme Court, October Term. 1910, opin-
ion by Mr. Justice Lurton.

WHITING, J.   This is an appeal from a judgment in favor
of the plaintiff and from the order denying a new trial.  It is al-
leged in the complaint, in substance, that on December 10, 1908,
at Blunt, S. D., the defendant in its capacity as common carrier,
undertook and agreed to transport the plaintiff and his baggage
from said Blunt to Sioux City, in the state of Iowa, and then and
there, for the purpose of transportation, received the plaintiff into
its care with his baggage, consisting of one trunk and contents,
of the alleged value of $488.30; that the defendant failed and
neglected to transport said trunk safely and deliver same to the
said plaintiff at Sioux City or at any other place, but negligently
lost the same with its contents to the damage of the plaintiff in
the sum above stated.  By way of answer the defendant denied
generally the allegations of the complaint except that it was and is
a railway corporation and was and is a common carrier of passen-
gers.  In addition it alleged that, if at any time it accepted any
trunk or baggage of the plaintiff for transportation from Blunt,
S. D., to Sioux City, at such time the said Sioux City was and
still is a place situated beyond the usual route of this defendant,
and that this defendant transported and delivered said trunk and
baggage at the end of its route at Alton, Iowa, in the direction
of Sioux City, to another competent carrier, namely the Chicago,
St. Paul, Minneapolis & Omaha Company.

[1]   At the commencement of the trial the defendant ob-
jected to the introduction of any evidence by the plaintiff upon
the ground that the complaint did not state facts sufficient to con-
stitute a cause of action, and the defendant contends that: "De-
fendant's objection that the complaint did not state facts sufficient
to constitute a cause of action should have been sustained for
the reason that it was necessary for plaintiff to plead and prove
a demand, in writing, upon the defendant for the money damages

claimed to have been sustained, as a condition precedent to the right to commence this action." The contention of counsel is based upon the proviso contained in section 442, Pol. Code, which reads as follows: "Provided, that in all cases demand in writing on said common carrier shall be made for the money damages sustained before the suit is brought for recovery under this section, and no suit shall be brought until the expiration of thirty days after such demand." We are of the opinion that this contention is untenable for the reason that chapter 7, containing the section referred to, provides: "Sec. 431. The provisions of this article shall apply to the transportation of passengers and property, and to receiving, delivering, storage and handling of property wholly within this state, * * * and shall also be held to apply to shipments of property made from any point within the state to any point within the state whether the transportation of the same shall be wholly within the state or partly within this state and an adjoining state or states." It will thus be seen that the act is expressly limited to transportation between points within this state, and has no application to interstate commerce beween this state and other states, and, in the case at bar, the contract was to transport the plaintiff and his luggage from a point in this state to a point within the state of Iowa.

[2] An examination of the record herein shows that the main contention of the appellant in the trial court was that, inasmuch as it delivered the trunk to the Omaha railroad company at Alton, Iowa, for transportation to Sioux City, it was not liable in this action to the plaintiff, and hence that the admission of a certain folder or timetable introduced by the plaintiff, over the objections of the appellant, to show that the Omaha road was controlled by the appellant, and the charge of the court with reference thereto, constituted error for which the judgment should be reversed. We are of the opinion that this contention is untenable as the act of Congress of June 29, 1906, known as the Carmack amendment to the act of 1887 providing for the Interstate Commerce Commission, imposed upon the carrier which accepts the property for transmission the liability of a common carrier for the entire distance so far as the party who has sustained the loss is concerned, whether that loss occurred upon the line of the original or primary carrier or upon the connecting line. This amend-

ment received construction in Atlantic Coast Line Railway Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. In the opinion the court says: "In substance, Congress has said to such carriers: 'If you receive articles for transportation from a point in one state to a place in another, beyond your own terminal, you must do so under a contract to transport to the place designated. If you are obliged to use the services of independent carriers in the continuance of the transit, you must use them as your own agents, and not as agents of the shipper.' It is therefore not the case of making one pay the debt of another. The receiving carrier is, as principal, liable not only for its own negligence, but for that of any agency it may use, although, as between themselves, the company actually causing the loss may be primarily liable."

Under the United States law, as construed in that decision, the defendant in this action was primarily liable for the loss of the trunk and contents notwithstanding the same may have occurred after the trunk was transferred to the Omaha road. It will not be necessary, therefore, in view of the decision of that learned court, to pass upon the question as to the admissibility of the timetable or folder as the court's charge and ruling, even if erroneous, would not constitute reversible error.

[3]   As above stated, the chief contention of the appellant in the trial court was that it was not liable for the loss of the trunk and contents after same had been by it turned over to the connecting line. Appellant also contends, as stated in its brief, that "the various article in the trunk,  *  *  *  not being articles intended for the use of the plaintiff while traveling, or for his personal equipment, did not constitute baggage, and the defendant is not liable for their loss." The articles objected to consisted of table cutlery, napkins, table cloths, curtains, pillowcases, pyrography outfit, as well as a shotgun and guncase.

In order to understand the real question before us, it is necessary to notice the record made upon trial. The appellant, defendant below, at no time, except by certain objections which would really go to the order of proof, raised the question that the plaintiff had not proven facts which showed the property lost to be baggage. The defendant moved to strike out the evidence that had been received in relation to the above-mentioned articles,

and based its motion solely upon the ground that such items were not baggage within the meaning of the law; but such motion in no manner raised the question of the facts proven being insufficient to show that, under the facts surrounding plaintiff's journey, the articles were baggage. The real contention of defendant as shown by the objections interposed and said motion to strike out evidence, was that the property above referred to, from its very nature, could not, under any circumstances, become baggage. Furthermore, in its instructions to the jury, the court virtually assumed that the property in question was baggage, and the defendant neither objected to the instruction upon the ground that the court had failed to submit the question of whether these goods were, under the facts in the case, baggage, nor did the defendant ask the court to give to the jury any instructions directing them to find whether or not such goods were baggage, and laying down the rule which should govern them in making such finding. It must be conceded that the question was one which should have been submitted to the jury, under proper instructions, unless it is true that the property in question would not, under any circumstances, be baggage. We are therefore confronted with the fact that, unless appellant's contention that the property would not, under any circumstances, be baggage is correct, the judgment must be affirmed for the reason that the appellant raised no question at the trial upon which it is entitled to a reversal. .

[4] Can, then, articles such as those mentioned, ever become baggage? We think that, under all the authorities, there can be but one answer to this question, and that in the affirmative. While this court will take judicial notice that, by federal statutes, the Interstate Commerce Commission has been given entensive powers in the regulation of interstate commerce, yet neither this nor the inferior courts of this state should take judicial notice of whether, in the exercise of such power, the Interstate Commerce Commission has in any manner prescribed what shall be included in the term "baggage" when applied to interstate commerce, and certainly no state court should take judicial notice of what definition ,if any, has been given to such term by such Commission. Thompson v. San Antonio & A. P. Ry. Co., 11 Tex. Civ. App. 145, 32 S. W. 427. No evidence was offered to prove any action upon the part of such Commission. We have in this state a

statute defining what shall be considered as baggage. There is nothing in the wording of this statute that would give to the term "baggage" any meaning different than the generally recognized meaning of that term. We can therefore look to the decisions of other courts as to what should comprise the term "baggage." Certain rules seem to be established by the universal authority of the courts of this country and England. The only trouble seems to flow from the application of the rule to the facts in a given case.

[5] The following rule is uniformly sustained: "The term 'baggage,' within the rule determining the carrier's liability, is defined to include whatever the passenger takes with him for his own personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or the ultimate purposes of the journey. Whether or not certain articles are within the term 'baggage' is to be determined from the character and length of the journey, its purposes and objects, the owner's station in life, and the habits and uses of the class of travelers to which he belongs."

Applying this rule, it is uniformly held that the guns of a hunter or the fishing tackle of a fisherman is properly a part of the baggage of the owner while on a hunting or fishing expedition. It must necessarily follow that the cooking utensils and the blankets of a party bent upon a camping expedition are baggage.

It was held in Missouri, etc., v. Meek, 33 Tex. Civ. App. 47, 75 S. W. 317, that the valuable tools belonging to a mechanic, shipped by him in a trunk when going on a journey whose mission was the doing of some work requiring the use of such tools, might be baggage, and that this was a question that should have been left to the determination of the jury. In the early case of Ouimit v. Henshaw, 35 Vt. 605, 84 Am. Dec. 646, it was held that, under certain circumstances, beds, pillows, bedquilts, etc., might be baggage.

We are of the opinion that two things should control in the determination of what is baggage: (1) The purpose of the journey; (2) the prevailing custom. Under the first of these, as heretofore stated, a camper might take, as his baggage, a camping outfit, including dishes and cutlery, the mechanic his tools when go-

ing to perform the work of his trade. If persons making a journey contemplate a short sojourn at some point where they, for the time being, will keep house, perchance in a furnished dwelling, but where they will need some of their own bedding, dishes, or cutlery, and they take the same in their trunk, it certainly is baggage, providing it is customary for people going upon such a journey to take such articles in their trunks, and providing the articles taken are such as will be reasonably needed for the purpose of so keeping house. Following the same rule, if it is customary for people when making a permanent change of abode (and whether or not it is customary is a question solely for the jury) to take with them, in trunks, various household articles such as dishes, cutlery, etc., then such articles, when so taken are baggage. Some decisions have seemed to imply that the value of the property so taken is material; but there certainly is no foundation for such a rule, except as it is controlled by the universal rule that the property must conform in amount of value to the condition in life of the party taking the same. This rule should be applied to those classes of articles which are infrequently shipped as baggage, as well as to those classes, such as clothing, which are universally regarded as proper baggage.

It cannot be held that baggage is only such articles as are needed during the journey itself, because this would exclude all articles placed in a trunk and checked through to the destination, and would exclude any person taking a single article as baggage if his journey was between points close together. Dexter, etc., v. Railway Co., 42 N. Y. 326, 1 Am. Rep. 527. We therefore hold that the question of baggage depends upon the purpose of the journey, and upon the customs of the country—the customs as they relate to both the class of articles shipped and the class to which the shipper belongs. Lawson on Bailments, 273, says: "The usages and customs of carriers and travelers must be considered in ascertaining what is baggage, and it is clear that the legal meaning of the word 'baggage' may be enlarged or restricted by such usages or customs. The free carriage of baggage, as we have seen, arose from the custom of the carrier, and not from any law or rule of public policy requiring baggage to be carried free. It has been often hold that, in determining what kind of goods a carrier is obliged to carry and is responsible for as a

common carrier and an insurer, the custom of the carrier is looked to; and, it being proved that it was his custom to receive and carry certain property for hire, his calling as a common carrier of such property becomes established, and his extraordinary liability as such attaches.    Therefore, if it should appear that things not heretofore considered by the courts as "baggage" have, by the usage of the time, of the carrier, and of his patrons, come to be considered as baggage, they will be so treated."

The trial court not having erred in the receipt of evidence, the question of the sufficiency of the evidence to support the verdict not being raised, the evidence having gone to the jury under instructions which virtually assumed that the entire contents of the trunk was baggage, the instructions not having been excepted to for this reason, and no instruction submitting to the jury the question of whether or not the articles lost were beggage having been requested, the judgment must be, and is, affirmed.

CORSON, J.   (dissenting).   I am unable to concur in the views expressed   in the majority opinion of this court, and I will briefly state my reasons for dissenting therefrom.

There was included in the list of articles claimed to constitute baggage in this case articles to the value of $228 consisting of household goods, silverware, table linen, etc., and a gun and guncase, which in my opinion, under the evidence, did not constitute baggage or luggage within the meaning of the law. . It seems to be claimed in the majority opinion that the question as to whether or not the articles constituted baggage is not properly raised in the case, and hence is not before the court for its decision.   I am of the opinion, however, that the question is very fully presented, as the counsel for the defendant objected to proof as to each one of the. articles, its value, etc., on the ground that it did not constitute luggage under the law, and the objection in each case was overruled and the ruling excepted to.   Subsequently, at the close of the plaintiff's evidence, counsel for the defendant made the following motion: "The defendant at this time makes a separate motion as to each item, and moves the court to strike out the testimony as to each item objected to, for the reason that each and all of the items objected to are not baggage or luggage within the meaning of our laws—the same not being intended for the use of a passenger while traveling, or for his personal equip-

ment—which items are as follows: (Specifying the various articles)." This motion was overruled by the court, to which ruling the defendant excepted. It will thus be seen that the court by overruling the defendant's motion, held, in effect, that, under the evidence, the articles mentioned did constitute luggage or baggage for which the plaintiff was entitled to recover. The defendant, by its objections and motion, therefore, fully presented the question to the trial court, and no further requests on the part of the defendant could have been properly made with due respect to the court.

The evidence before the court upon this subject is as follows: The plaintiff testified on cross-examination: "We had sold our house and moved into a little office I had for a real estate office. I left Blunt on the morning of December 11, 1908. These items I have mentioned were part of my household goods and furnishings and clothing I had been using at Blunt. I was expecting to engage in business. We did not take exactly all our household goods and furnishings. We took what stuff we could in the trunk that was valuable. * * * I went to Blunt once, just long enough to pack up and move to Rapid City." Mrs. House testified on cross examination, after describing the various articles: "(They) were part of our household furnishings at Blunt. We were taking them on account of leaving Blunt, and did not consider them safe in the building where we were." This was practically all the evidence relating to the articles objected to and which the defendant moved to strike from the list. It will be observed, therefore, that there was no evidence to be submitted to the jury, as the evidence of the plaintiff and his wife was undisputed that they were moving from Blunt to Sioux City, and that the articles objected to were taken by them for the reason that they were moving from Blunt to Sioux City where the plaintiff intended to engage in business, and that the items mentioned constituted the valuable part of their household goods and furnishigs. In my opinion, therefore, the trial court should have held, as a matter of law, that the articles objected to did not constitute luggage or baggage, and that the motion of the defendant, made at the close of plaintiff's evidence, should have been granted.

The court in the majority opinion seems to hold that the question of whether or not the articles taken by a person on his

or her journey as baggage or luggage is properly taken as such is a question for the jury to decide in all cases, but I am of the opinion that this is an erroneous view, and is not sustained by the authorities.

The case of Macrow v. Great Western Ry. Co. L. R. 6 Q. B. 612, is very analogous to the case at bar, and the Court of Queen's Bench held in that case, as appears by the headnote, as follows: "The plaintiff, a passenger by the defendants' railway from Liverpool to London, took with him in a trunk, as his personal luggage, six pairs of sheets, six pairs of blankets, and six quilts. He had given up his residence in Canada, and these articles were intended for the use of his household when he should have provided himself with a home in London. The trunk having been lost, he sought to recover the value of the articles from the defendants. Held, that the articles, being intended for the use of the plaintiff's household when permanently settled, could not be considered as personal or ordinary passenger's luggage." And Cockburn, C. J., in discussing the question, says: "The term 'ordinary luggage' being thus confined to that which is personal to the passenger, and carried for his use and convenience, it follows that what is carried for the purpose of business, such as merchandise and the like, or for larger and ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary luggage, unless accepted as such by the carrier." The Supreme Court of Tennessee in the analogous case of Yazoo & M. V. R. Co. v. Baldwin, 113 Tenn. 205, 81 S. W. 599, held, as appears by the headnote, that: "A married woman traveler is not entitled to recover for the loss of articles constituting household goods which she was carrying in her trunk, though she and her husband were changing their residence by removal from one state to another, where the carrier had no notice of the fact that such goods were being transported as baggage." And that court held, after a very exhaustive discussion, that the judgment should be modified by deducting therefrom the enumerated articles not properly regarded as baggage, and modified the judgment accordingly. As bearing upon the question of what constitutes baggage, see the following cases: Choctaw Ry. Co. v. Zwirtz, 13 Okl. 411, 73 Pac. 941; Missouri R. Co. v. Meek, 33 Tex. Civ. App. 47, 75 S. W. 317; St. Louis R.

Co. v. Hardway, 17 Ill. App. 321; Mauritz v. N. Y. Cent. Ry. Co. (C. C.) 23 Fed. 765; Saunders v. Railway Co., 128 Fed. 15, 62 C. C. A. 523; Giles v. Fauntleroy, 13 Md. 126; Connoly v. Warren, 106 Mass. 146, 8 Am. Rep. 300; Miss. R. Co. v. Kennedy, 41 Miss. 671; Chicago, etc., R. Co. v. Boyce, 73 Ill. 510, 24 Am. Rep. 268; Oakes v. Ry. Co., 20 Or. 392, 26 Pac. 230, 12 L. R. A. 318, 23 Am. St. Rep. 126.

It is quite clear from the authorities, both English and American, that the question of what is or is not luggage or baggage is a question of law for the court to decide, and, where the evidence is undisputed, the court must decide this question. It is undoubtedly true that what may constitute luggage or baggage depends largely upon the purpose for which the journey was undertaken and the circumstances connected with the same; but in the case at bar there was no evidence proving or tending to prove, any facts which would authorize the court to hold that such articles were baggage or luggage.

The judgment of the court below, in my opinion, should be reversed, or at least modified by striking therefrom the value of the articles as proven.

HANEY, J., concurs in the views expressed by Judge CORSON.