SCHAFF et al. v. GIBSON et al. (No. 10495.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 2, 1924.)

1. Carriers �köm 408(3)—Complaint held to show delivery of lost trunk to defendant connecting carrier as against general demurrer.

Under Rev. St. art. 710, requiring common carrier to give shipper on demand a bill of lading or memorandum in writing, a complaint in a suit against a connecting carrier for the value of a lost trunk, alleging that shipper delivered baggage checks received from the first carrier to defendant, whose agent issued checks in lieu thereof, sufficiently showed delivery of the trunk to defendant, as against a demurrer, since such agent was without legal authority to issue checks in advance of actual receipt of the property, and there being a presumption that he performed his duty.

2. Carriers �köm 408(4)—Evidence held insufficient to show delivery of trunk to connecting carrier.

In a shipper's suit for the value of a lost trunk against the receiver of the second or destination carrier, evidence held insufficient to support a finding that the trunk was delivered to defendant's agent.

3. Carriers �köm 397½—Actual delivery of trunks to carrier necessary to railroad receiver's liability for loss.

Rev. St. art. 713, requiring transportation of goods in the order received imposes no duty to forward goods until actually received, and in the absence of proof of authority of an agent to bind a railroad receiver by special contract to deliver trunks the company was bound by its legal duty to transport only after actual receipt of the trunks, and there can be no liability in the absence of a duty.

4. Carriers �köm 391—"Baggage" defined.

Within the rule imposing liability for its loss, "baggage" includes whatever the passenger takes with him for his own personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to immediate necessity or ultimate purposes of the journey

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Baggage.]

5. Carriers ⊚köm 408(6)—Whether contents of lost trunk was baggage was mixed question of law and fact.

In a shipper's suit for the value of a lost trunk and contents, whether sheets and pillow cases, feather pillows, feather bed, quilts, lavalier and chain, and picture frames were baggage was a mixed question of law and fact, determinable by the court or jury from all the circumstances under proper instructions.

⊚köm For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal form Montague County Court, H. S. Calaway, Judge.

Suit by W. J. Gibson and others against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas, and another. Judgment for plaintiffs in both justice and county courts, and from the latter judgment the named defendant appeals. Reversed and remanded.

H. W. Hunt, of Lamasco, for appellant.
Rebel L. Robertson, of Houston, for appellees.

CONNER, C. J. The appellees, W. J. Gibson, Annie Gibson, his wife, and Mollie Hurley, their daughter, instituted this suit in the justice court of Montague county against the Chicago, Rock Island & Gulf Railway Company and C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas, to recover the sum of $190, alleged to be the value of a trunk and its contents. The trial in the justice court resulted in a judgment for the plaintiffs against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company, and a discharge of the Chicago, Rock Island & Gulf Railway Company.

From this judgment the receiver appealed to the county court, wherein the plaintiffs filed an amended petition. It was alleged that on the 18th day of May, 1920, the plaintiffs purchased three first-class railway tickets at Gotobo, Okl., entitling them to transportation to the town of Ringgold, Montague county, Tex., and also entitling them to transportation for their baggage; that upon the purchase of their tickets at Gotobo the Chicago, Rock Island & Gulf Railway Company at that place delivered to plaintiffs checks or receipts for two trunks to be conveyed as their baggage; that upon arrival at Ringgold, Tex., they purchased three first-class railway tickets from the agent of defendant C. E. Schaff, receiver, entitling them to transportation for themselves and their baggage from the town of Ringgold to the town of Nocona, Tex., and said agent at the time—

"issued and delivered to plaintiffs checks or receipts for the two trunks aforesaid, and in lieu of the checks theretofore issued to plaintiffs at Gotobo, Okl., by the defendant Chicago, Rock Island & Gulf Railway Company. That plaintiffs gave such checks to the agent of the said receiver, Schaff, and received the checks of said receiver for the two trunks aforesaid."

It was further alleged that one of the two trunks had been later delivered to the plaintiffs at Nocona, but the other one and its contents had never been delivered. An itemized list of the contents was attached to the petition as an exhibit.

The trial was before the court without a jury, and the court has filed his conclusions of fact and law, upon which he rendered judgment in favor of the plaintiffs for the sum of $188.75 against the receiver, and in favor of the Chicago, Rock Island & Gulf Railway Company, discharging it, and for its costs as against the plaintiffs. From the judgment so rendered, the receiver has appealed.

No brief has been filed in behalf of appellees, but appellant presents three questions. It is urged, first, that the plaintiffs' petition is subject to a general demurrer; second, that the court's finding to the effect that the lost trunk and its contents were delivered to the agent of the receiver at Ringgold for transportation ·is not supported by the evidence; and, third, that certain articles, aggregating in value $66.50, specified in the exhibit and alleged to have been lost, did not constitute "baggage," for which the appellant in any event would be liable.

[1] We are of the opinion that the plaintiffs' amended petition as against the general demurrer sufficiently supports the judgment. As already shown, it was alleged in effect that the baggage checks received by the plaintiffs from the Chicago, Rock Island & Gulf Company were delivered to the agent of the receiver at Ringgold, who received said checks and issued therefor checks of appellant for the trunks for transportation to Nocona. The statute provides, viz., Rev. St. art. 710, that:

"Common carriers are required, when they receive goods for transportation, to give to the shipper, when it is demanded, a bill of lading or memorandum in writing," etc.

And if we indulge in favor of the petition all legitimate inferences that may be drawn therefrom, it can be said that the agent of the receiver would not have issued the receiver's checks for the baggage in question, until delivered; it being true, as will hereinafter more particularly be shown, that the agent was without authority to issue checks of his company in advance of the actual receipt of the property.

[2] The controlling question, however, for our determination, is whether the evidence supports the court's finding that the lost trunk in controversy, containing the items for which the judgment was rendered, was in fact ever delivered to the agent of the appellant receiver. The statement of facts is quite brief, and has been read, not only in consultation, but more than once by the writer, and we have concluded that the evidence fails to support the court's finding on the issue stated. In substance, it was shown that the plaintiffs, as alleged, purchased three first-class tickets at Gotobo, Okl. for Ringgold, Tex.; the selling agent of the Chicago, Rock Island & Gulf Company at the time issued and delivered to the plaintiffs checks for two trunks; that the plain-

tiffs arrived at Ringgold in the nighttime, the agent of the Chicago, Rock Island & Gulf Company not being present to receive either the plaintiffs or their baggage; that the plaintiffs delivered their Chicago, Rock Island & Gulf Company checks to the driver of a transfer agency, with instructions to transport their baggage from the Rock Island station at Ringgold to the station of the Missouri, Kansas & Texas Railway Company at the same place; that at the time the trunk in controversy had not been delivered at Ringgold, for which, however, the transfer agent delivered to the plaintiffs what he termed a "short check"; that the plaintiffs delivered this short check, and, as we infer, one original trunk check, for which the agent of the receiver delivered two trunk checks of his company and promised plaintiffs to forward the trunks to Nocona, at which place plaintiffs later received only one of their trunks.

The agent of the transfer company testified that:

"Later a trunk and a box came back from Bowie [a station on the Rock Island Railway south of Ringgold], and I hauled them to the Missouri, Kansas & Texas Railway station and delivered them to the Missouri, Kansas & Texas agent. This was at night. I did not get the transfer company's short checks at that time, but got them the next day, and when I got the checks, in discussing the matter with the agent, I told him that I thought he had got the check on the trunk and the one on the box changed from the way they should be."

He further testified that it was the custom of the agents working for the transfer company at Ringgold to give short checks to passengers whose baggage had not arrived, and that passengers take these checks and go to the agent of the other railway company, and deliver them to him, and receive other checks in return, and that when the baggage arrives the transfer company delivers it to the agent and he surrenders the short check. He testified that he gave the agent only one short check. "It was returned to the transfer company through me the day after I delivered the trunk and box."

The evidence further discloses that later the plaintiffs were tendered a tool box at Nocona, which they declined to receive, on the ground that it was not their property. This tool box had the same check number as that issued by the agent of the receiver for the missing trunk. The evidence wholly fails to disclose the check number that was upon the trunk or upon the box on arrival from Bowie, or when delivered to the transfer agent at Ringgold, or when delivered to the agent of appellant, receiver, at the same place. Nor do we find any description of the trunk which enables us to say that the trunk delivered to the agent of the receiver at the time the box was delivered was the missing trunk belonging to the plaintiffs. For aught that the evidence shows, this may have been a trunk belonging to some other person, or, if a change was made in checks, there is nothing to show that it did not occur at some station on the Rock Island Railway rather than at the station of the receiver at Ringgold. It is true that the agent of the transfer company testified that he told the agent of the receiver "that he thought he had got the check on the trunk and the one on the box changed from the way they should be"; but this declaration evidently cannot be given binding effect as against the appellant. The transfer agent does not testify to the facts upon which he based such an inference, so as to enable us to draw any such conclusion, and no authority in him is shown to speak for the appellant.

[3] The burden is undoubtedly upon the plaintiffs to establish the liability of the receiver, and such liability cannot be established on the mere promise of his agent at Ringgold that he would forward the trunks. There is no authority alleged or shown in such agent to bind the company by any such contract. In the absence of such authority, the company can only be bound by its legal duty to transport the trunks after their actual receipt. By the terms of the law already quoted, carriers are required to give to shippers bills of lading or memorandums in writing, etc., "when they receive goods for transportation," and not before. By a further article of the statutes, viz. article 713, it is declared that:

"Where common carriers receive goods for transportation into their warehouses or depots, they shall forward them in the order in which they are received," etc.

No duty to forward goods is imposed by the terms of the statute so quoted until they are received for transportation, and there can be no liability in the absence of a duty. Elliott on Railroads, § 1403, says:

"A railroad company is responsible as a common carrier of things either wholly or not at all; that is, 'there is no divided duty of safekeeping and no apportionment in the event of a loss.' If it does not become completely liable as a common carrier, then it cannot be held in any respect to be liable in that capacity, although it may be liable in some other capacity, as, for instance, in that of a warehouseman. The responsibility begins with the completion of the delivery to it, whether a bill of lading has or has not been issued at that time. As a general rule, there is no liability as a common carrier until delivery."

Exceptions to the rule so stated are noted by the author, but the facts of this case do not bring it within any of those exceptions, and we need not therefore discuss them. As in harmony with the statement made in the

quotation on the issue of the carrier's liability, we cite the following authorities, which seem to support the rule there stated, to wit: Railway Co. v. Thomas (Tex. Civ. App.) 178 S. W. 707; Southern Ry. Co. v. Bickley, McClure & Co., 119 Tenn. 528, 107 S. W. 680, 14 L. R. A. (N. S.) 859, 123 Am. St. Rep. 754, 14 Ann. Cas. 910; Railway Co. v. Chambers (Tex. Civ. App.) 149 S. W. 1182.

We accordingly conclude that, delivery of the trunk in question not having been shown, the court erred in rendering judgment against appellant, for which error the judgment must be reversed and cause remanded.

In view of a new trial, we will briefly notice appellant's further contention that certain items contained in the lost trunk did not constitute baggage, within the meaning of the rule making a carrier liable therefor. The items objected to are as follows: Sheets and pillow cases, $5; feather pillows, $2.50; feather bed, $30; quilts, $5; lavalier and chain, $10; picture frames, $10; total, $62.50.

[4, 5] Numerous definitions of the term "baggage," within the rule imposing upon a carrier liability for its loss, may be found. Generally speaking, it may be said to include whatever the passenger takes with him for his own personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessity or the ultimate purposes of the journey. See M., K. & T. Ry. Co. v. Meek, 33 Tex. Civ. App. 47, 75 S. W. 317. The issue is a mixed question of law and fact, determinable by the court, or by a jury, from all the circumstances in the case, under proper instructions from the court. 1 White & Willson Civ. Cases, § 1255; Tex. Ry. Co. v. Lawrence, 42 Tex. Civ. App. 318, 95 S. W. 663; M., K. & T. Ry. Co. v. Meek, supra; Mexican Nat. Ry. Co. v. Ware (Tex. Civ. App.) 60 S. W. 343.

We have not been able to determine, from the circumstances presented on this appeal, whether the articles designated were subject to the objection appellant urges against them. All that is shown is that the plaintiffs procured transportation to Nocona; just how long it was their purpose to remain at that point, and what necessity, if any, existed for the use of the questioned articles, is not shown. For aught that appears, they may have been reasonably necessary for the convenience or comfort of the plaintiffs during the term of their stay, and such as might, within the rules applied to such cases, reasonably be declared to be baggage. However, we need not at this time decide the question, nor further discuss it, inasmuch as upon another trial the circumstances may be more fully shown.

Judgment reversed and cause remanded.