## 242 CASES IN THE SUPREME COURT

May Term, 1855.

DOYLE
v.
KISER.

---

## DOYLE *v.* KISER.

Suit by *A.* against *B.*, the proprietor of a canal-boat, to recover the value of a carpet-bag and its contents, alleged to have been lost by *A.* while in *B.'s* possession as a common carrier. The facts of the case were as follows: *A.*, on his return journey from *California*, went aboard *B.'s* packet-boat at *Fort-Wayne*, on the *Wabash* and *Erie* canal, taking with him his carpet-bag, containing certain articles of clothing, &c., and near 4,000 dollars in gold. He paid his fare, simply as a passenger, to *Lagro*, another point on the canal, and deposited his carpet-bag, with the luggage of other passengers, on the deck of the boat, which was generally used for that purpose. On arriving at *Lagro* the carpet-bag was missing, and it was afterwards found in the canal. The gold and clothing had been abstracted, and the circumstances showed that they had been stolen. There was, also, evidence tending strongly to show that they had been stolen by one of the defendant's boatmen. *A.* made no communication to any officer of the boat, during the passage, as to the contents of the carpet-bag. The boat was provided with a small safe, and there was evidence tending to show that passengers were notified to have articles of value placed in it or keep them at their own risk; but on this point the evidence was very conflicting. The boat was in the habit of carrying articles of freight, but did not book or check baggage. The affidavit of *A.* was admitted on the trial to prove the contents of the carpet-bag; and there was a verdict and judgment for the amount of the gold, as well as of the clothing, &c.

*Held*, that the delivery by *A.* was, as to the carpet-bag and the articles of ordinary baggage it contained, sufficient.

*Held*, also, that *B.* was liable for the value of the ordinary articles of baggage, but not for the gold.

*Held*, also, that *A.'s* affidavit, so far as it related to the ordinary articles of baggage, was properly admitted.

Common carriers of passengers are not liable for articles of value not transported to supply any wants of the traveler, as such, on his journey, and not made known to the carriers or their agents, nor paid for as freight, but put

aboard the conveyance by the passenger simply as baggage and so treated by himself on the journey.

Articles treated as baggage may consist of clothing, money for defraying traveling expenses, a few books for the amusement of reading, a watch, a lady's jewelry for dressing, &c.

May Term,
1855.

DOYLE
v.
KISER.

APPEAL from the *Miami* Circuit Court.

Wednesday,
May 30.

PERKINS, J.—This was a suit by *Kiser* against *Doyle*, the proprietor of a canal packet-boat, to recover the value of a carpet-bag and contents, alleged to have been lost by *Doyle* while in his possession as a common carrier. There are several counts in the declaration, in which the charge of the loss is variously stated. The general issue was filed, the cause tried by a jury, and the plaintiff, over a motion for a new trial, had judgment for 3,357 dollars and 37 cents.

The facts of the case appear in the record.

*John Kiser*, the plaintiff in the suit, on his return journey from *California*, went aboard the packet-boat "*Empire*," at *Fort-Wayne*, *Indiana*, taking with him his carpet-bag, containing articles of clothing, &c., and nearly 4,000 dollars in gold. He paid his fare, as a passenger simply, to *Lagro*, a point westward from *Fort-Wayne*, on the *Wabash* and *Erie* canal, and deposited his carpet-bag, with the luggage of other passengers, on the deck of the boat, the place generally used for such purpose. The passage from *Fort-Wayne* to *Lagro* occupied the whole of the night of the 25th of *October*, 1850, which was cloudy and dark. The carpet-bag weighed, says a witness, about twenty-five or thirty pounds, and, on arriving at *Lagro*, was missing from the boat. It was found in the following *March*, in the *Wabash* and *Erie* canal, from sixty to eighty rods above *Cheesbro's* lock, on the heel-path side of the canal, the water being then out of it. "There was a hole cut in the bag, which was froze together." The bag contained various articles of clothing, &c., and three stones as large as a man's fist, such as are found about the lock in the canal at *Huntington*, "about five miles back from where the bag was found." The identity of the bag found with that lost was admitted, and the articles it contained,

May Term, excepting the stones, corresponded, as far as they went,
1855.     with the articles alleged to have been lost, including a
Doyle     miniature of the plaintiff himself.
v.
Kiser.         *Kiser* made no communication, during the passage, to
any officer of the boat, touching the contents of his carpet-
bag.

The boat was provided with a small safe, and there was
evidence tending to show that passengers were notified to
have articles of value placed in it or keep them at their
own risk, though upon this point the testimony was very
conflicting.

The boat was in the habit of carrying articles of freight,
but did not book or check baggage.

It was proved that *Doyle*, the defendant to the suit, was
the owner of the boat; and the evidence tended strongly
to show that the carpet-bag was robbed of most of its
gold by one of his boatmen.

The affidavit of *Kiser*, the plaintiff, was admitted on the
trial below, to prove the contents of the lost carpet-bag.

We have thus sufficiently stated the facts to present the
points of law to be decided.

And the question first presenting itself is—Are common
carriers of passengers liable for articles of value not trans-
ported to supply any wants of the traveler, as such, on
his journey, and not made known to the carriers or their
agents, or paid for as freight, but put aboard of the convey-
ance, by the passenger, simply as luggage, and so treated
by himself on his journey?

Stage-coach proprietors, packet-boat owners, railroad
companies, and others, may be engaged in the transporta-
tion of passengers only, or of passengers and freight, or
of freight only; and some little confusion seems to have
crept into the cases arising upon these employments, from
a failure to observe the distinctions growing out of the
variety of pursuit. A stage-coach proprietor has received,
to carry for a reward, a box, in which he was told there was
"a book and tobacco," but which contained, also, £100
in money, and which, being lost, he has been held liable
for the entire contents, because, there being no fraudu-

lent concealment, the carrier having asked no questions and made no conditional acceptance, he was a guarantor of the package he had undertaken to carry. But there was no passenger in the case, it must be observed, and the box was not baggage, but carried as freight, and paid for as such. See *Gibbon* v. *Paynton* and Another, 4 Burr. 2298.

Again, in the case of *Walker et al.* v. *Jackson et al.*, 10 Mees. and W. 161, "the plaintiff paid 5s. for the ferriage of his phaeton and horse, which, according to the defendants' scale of charges, was the charge for 'a light four-wheeled phaeton and one horse,' and he did not communicate the fact that the carriage contained, in the box-seat, jewelry and watches to the value of several thousand pounds." Before the phaeton was landed on the opposite side of the ferry, it, and the jewelry contained, were injured. The ferryman was held liable. *Parke*, B., says— " I take it now to be perfectly well understood, according to the majority of opinions upon the subject, that if any thing is delivered to a person to be carried, it is the duty of the person receiving it to ask such questions about it as may be necessary; if he ask no questions, and there be no fraud to give the case a false complexion, on the delivery of the parcel, he is bound to carry the parcel as it is."

But this language, also, we see, was used in a case where an article was carried and paid for as freight; and, we wish to add, in a case that, under any view, seems scarcely reconcilable with principles of common honesty. The case is as if *Kiser* had gone to the proprietor of the packet, told him he had an ordinary carpet-bag, which he wished to have carried for hire, paying for it specially as such, disclosing nothing as to the gold.

The above two cases, then, we discover, on examination, differ so materially in their facts from that now under consideration, that they are not authority in it. Other and different cases are quoted as in point to the one before us; *Holister* v. *Nowlen*, and *Cole* v. *Goodwin*, 19 Wend. 234, 251. These were suits by travelers for lost baggage proper, and nothing more, and the coach proprietors resisted the

suits, on the ground that they had published notices that baggage was to be at the risk of the owner; and the validity of such notices was the main point to be decided; and it was decided against their validity, the Court holding that common carriers could not thereby absolve themselves from liability for baggage of the traveler, but must do it by a special agreement with him. The judges, however, did not stop here, but went into a general discussion of the liabilities of carriers, without distinguishing whether of freight or passengers or both, and in the course of remark said, and quoted from *Phillips* v. *Earle*, 8 Pick. 182, that "the owner is not bound to disclose the nature or value of the goods; but if he is inquired of by the carrier, he must answer truly;"—the doctrine, as we have seen, by the two cases first cited in this opinion, that governs where packages, bags or boxes are delivered and received as freight, and paid for as such, no questions being asked as to contents; and which doctrine, as applicable to the facts of the cases of *Hollister* v. *Nowlen* and *Cole* v. *Goodwin, supra*, could only mean that travelers carrying nothing except legitimate articles of baggage proper, are not bound to mention to the railroad, steamboat, or stage-coach, &c., proprietor or master the particular articles composing their baggage; as so many stockings, shirts, or other articles of personal necessity or convenience for the journey.

These cases, therefore, do not meet the one now before this Court. Yet the learned counsel for the plaintiff below, taking up such cases and *dicta*, and applying them to the present case, say, with much earnestness, here, too, was a bag or parcel delivered to a common carrier, no questions were asked, no fraud practised, it contained a large amount of money, was lost, and the carrier, as insurer, must make it good. But the want of application of the cases and *dicta*, has already been pointed out. Here no package was delivered and paid for as freight; and the suit is not for lost baggage proper, but for other property which was never delivered and paid for as freight, but which was got on board the boat under the guise of baggage, when it was not, to avoid the payment of freight, and yet with the

intent of receiving the benefit of an insurance without cost; and the question is, can the owner recover against the carrier for that?

Upon this question there is a class of authorities directly in point, and they establish satisfactorily the general rule that he can not. The carrier's liability upon a state of facts such as this case presents, extends only to such reasonable articles of baggage, or luggage, as it is called in *Europe*, as may be necessary for the traveler's convenience, no matter what or how valuable other articles may be which are introduced into the conveyance under the guise of baggage. The articles of property treated as baggage, according to the decisions of different Courts, may be, clothing, traveling expense-money, a few books for the amusement of reading, a watch, a lady's jewelry for dressing, &c. The law is thus settled in *England*, by statute and judicial decision, and in this country by the latter mode. *Hawkins* v. *Hoffman*, 6 Hill (N. Y.) Rep. 586.—*Jordan* v. *The Fall River Railroad Company*, 5 Cush. (Mass.) Rep. 69.—*The Mad River and Lake Erie Railroad Company* v. *Fulton*, 20 Ohio 318.—*The Great Northern Railroad Company* v. *Shepherd*, 9 Eng. L. and E. Rep. 477, S. C.—14 Eng. L. and E. Rep. 367.

This latter case lays down the law thus:

"If a passenger on a railway, by a third class parliamentary train, carry merchandise packed up with his personal luggage, the railway company are not responsible for the value of the merchandise, if the luggage be lost from the train. But if the merchandise be so packed as to be obviously merchandise to the eye, and the railway company make no charge or special bargain for the carriage, they will be responsible for the loss."

Under such circumstances, the assent of the company to take the risk, may possibly be implied. And, in this case, perhaps, had *Kiser*, when he entered the boat, informed the captain that his carpet-bag contained his ordinary baggage, and a given amount of gold in addition, and had the captain, with this information, proceeded, without objection, to take charge of the bag and contents, he might have

May Term,
1855.

DOYLE
v.
KISER.

been liable, though on this hypothesis we make no decision.

But it is said that the evidence shows that the gold in question was purloined from the carpet-bag by a hand employed upon the boat, and that, on this ground, at all events, the defendant in the suit must be liable. It is the general doctrine that a master is liable for the torts of his servants committed while acting within the scope of their authority as such. And upon general principles of law a carrier is responsible for freight which he undertakes to carry. But these doctrines have no application here, for the gold, the present subject of controversy, never went to the possession of the proprietor of the packet-boat, and his servants had no authority from him touching it. It was never in his charge; had it been he would have been liable; but he never became liable for it as a carrier; this we have already decided; and we confess we are not able to assign a reason, satisfactory to ourselves, why he should be liable by reason of the acts of his servants in regard to property he himself was never intrusted with. If those servants, at any town where the boat might have stopped, had stolen money from the drawer of a merchant of the place, it would hardly be pretended the proprietor of the boat would have been liable; and how is the present case to be distinguished? At all events, he can not be held liable in this case, but upon proof of gross negligence on his part, if at all, and such proof was not made.

Two other points are made in the case.

It is said the carpet-bag in question never was, in fact, delivered to the custody of the carrier. We think the delivery was sufficient as to the carpet-bag and the articles of ordinary baggage it contained. The delivery was in the usual mode by which baggage was received. The boat was not in the habit of checking or noting baggage by any written memorandum.

It is insisted, also, that the affidavit of the plaintiff was not admissible to prove the contents of the lost carpet-bag; but we think the weight of authority and reason of the case are, that such affidavit is admissible to prove the contents,

in such a case as this, to the extent of the articles of ordi- May Term, nary baggage. That being the limit of the right to re- 1855. cover, should be the limit of the right to make the proof. On this point we shall not review the authorities. See them collected in a note to *The Great Northern Railway Company* v. *Shepherd*, 9 L. and E. Rep., *supra;* and *The Mad River &c. Company* v. *Fulton*, 20 Ohio, *supra*.

As the jury, in this case, gave the plaintiff a verdict for his gold, under instructions of the Court favorable to such finding, and the Court confirmed the verdict by a judgment, it must be reversed with costs, and the cause remanded for further proceedings.

STUART, J., having been concerned as counsel, was absent.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*Z. Baird, H. P. Biddle* and *B. W. Peters*, for the appellant.

*D. D. Pratt, D. M. Cox* and *J. M. Connell*, for the appellee.