## WOOD v. CUNARD S. S. CO., Limited.

### (Circuit Court of Appeals, Second Circuit. December 12, 1911.)

### No. 46.

1. SHIPPING (§ 167*)—PASSENGER'S BAGGAGE—LIMITATION OF LIABILITY—EVIDENCE—SUFFICIENCY.

On libel by a steamship passenger for loss of a trunk, evidence *held* insufficient to show an agreement limiting the steamship company's liability to £5 sterling.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. § 167.*

Limitation of carrier's liability, see note to The Longfellow, 45 C. C. A. 387.]

2. SHIPPING (§ 167*)—BAGGAGE—WHAT CONSTITUTES.

Manuscript of a manual on Greek grammar, which a steamship passenger had written, and of which he had no copy, contained in a trunk, was a proper part of his baggage as affecting the steamship company's liability for loss of the trunk.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. § 167.*]

3. SHIPPING (§ 167*)—LOST BAGGAGE—VALUE—EVIDENCE—WEIGHT.

On libel against a steamship company for loss of a passenger's trunk, evidence *held* to show that manuscript contained in the trunk was worth $500.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. § 167.*]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by D. Gifford Wood against the Cunard Steamship Company, Limited. From a decree awarding insufficient damages, libelant appeals. Modified and affirmed.

This cause comes here upon appeal from a decree awarding damages to the amount of $100 only for the loss of a trunk and its contents. Libelant, an English school-teacher, came from Liverpool to the United States as a steerage passenger on one of defendant's steamers. One of his trunks, which it is conceded was delivered to defendant at Liverpool, has never been found. For wearing apparel, etc., contained therein, the court awarded $100. Among its contents was the manuscript of a manual on Greek grammar, which he had written, and of which he had no copy. He claims $5,000 for its loss.

Louis Marshall and Abraham Benedict, for appellant.

Lucius H. Beers and Allan B. A. Bradley, for respondent.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] The first question which may be considered is whether an agreement was entered into limiting the amount of recovery to £5. The ticket is in the usual form of so-called passenger's contract ticket. The face of the ticket contains many provisions. As reproduced in the record on appeal it covers 3½ pages. Upon it in heavy black type are the words "See Back." On the back in similar type are the words

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Notice to Passengers," followed by seven paragraphs containing various provisions. Among them is the following:

"4—Neither the shipowner, nor the passage broker or agent, is in any case liable for loss of or injury to or delay in delivery of luggage or personal effects of the passenger beyond the amount of £5, unless the value of the same in excess of that sum be declared at or before the issue of this contract ticket, and freight at current rates for every kind of property (except pictures, statuary, and valuables of any description, upon which one per cent. will be charged) is paid."

This ticket was not signed by the passenger, nor was his attention called to any part of it. The only contention is that he read the notice and must be understood to have agreed to the provisions on the back, since they were prefaced with the words:

"This contract is made subject to the following conditions."

We are not convinced by the evidence that the libelant read the notice, and could only find that he did read it by an assumption which might or not be well-founded. The libelant testified that he had no distinct recollection of having examined the notice, but felt sure he had done so. This he immediately qualified by stating that he did not know that there was any limitation of liability contained in the notice. The only fair interpretation of his testimony is that, although without distinct recollection, he did examine the notice in a general way, but did not know that there was any limitation in it. There is no satisfactory proof of any such meeting of the minds of the parties as would constitute an agreement materially to modify the obligations of the carrier, and without such agreement we do not think this indorsed notice can be imported into the contract.

[2] The more important question in the case, however, is whether this manuscript may properly be considered an item of passenger's baggage. The libelant has described the manual at considerable length. The scheme of the book was that pupils should be taught Greek on exactly the same system on which they are taught modern languages; that is to say, to be able to speak it, as well as to be able to read and write it. He got the idea originally from a French scholar named Galland. It was partly written and partly typed, and libelant had been engaged in its preparation while a student in the university from which he graduated and during about eight years thereafter, while he was engaged in teaching. Of course, he worked at it only at intervals. He testified that he hoped in the course of time to publish it; but its immediate purpose, and the reason why he carried it about with him, was as an aid to teaching. He used it as a lecturer on professional subjects uses the notes and excerpts from which he draws the material for his lectures.

Passenger's baggage is not confined to wearing apparel and similar articles. In Porter v. Hildebrand, 14 Pa. 129, it was held that a reasonable amount of the tools with which he works may be carried by a journeyman carpenter as baggage. The court says that the right to carry tools as baggage is unquestionably open to abuse, but adds that the correction is to be found in the intelligence and integrity of the jury called to determine under the circumstances of each case.

To the same effect are Davis v. Cayuga & Susquehanna R. R., 10 How. Prac. (N. Y.) 330 (harnessmaker's tools, valued at $10), and Kansas City R. R. v. Morrison, 34 Kan. 502, 9 Pac. 225, 55 Am. Rep, 252 (a set of watchmaker's tools, apparently not of great value). In Staub v. Kendrick, 121 Ind. 226, 23 N. E. 79, 6 L. R. A. 619, a traveling salesman's illustrated catalogue, valued at $50, was held to be baggage; and a similar conclusion was reached in Gleason v. Transportation Co., 32 Wis. 85, 14 Am. Rep. 716. In T. & P. Ry. Co. v. Morrison Faust Co., 20 Tex. Civ. App. 144, 48 S. W. 1103, manuscript music used in connection with the business of a traveling dramatic company was held to be baggage; the amount is not stated. In Werner v. Evans, 94 Ill. App. 328, the record books of a professional nurse were included in a verdict which was considered on appeal. The court said:

"We think the record book in question might reasonably be included in the articles which, without imposition on the carrier, appellee could properly have carried in such valise, and for the loss of which she is entitled to be compensated at such valuation as from evidence the jury should find. The said books were, it appears from the evidence, implements used in her vocation as nurse, and such as she might properly include with her garments, also used in such employment, as a part of her reasonable baggage. It was not necessary to show that the books had a general market value, in order to prove what they were reasonably worth to appellee."

In Hannibal R. R. v. Swift, 12 Wall. 262, 20 L. Ed. 423, it was held that surgical instruments, the property of an army surgeon traveling with troops, may properly be regarded as part of his baggage.

A case quite similar to the one at bar is reported in Hopkins v. Westcott, 6 Blatchf. 64, Fed. Cas. No. 6,692 (C. C. Southern District of New York). There plaintiff, who was a student at Columbia College and was proceeding to New York for the prosecution of his studies, carried in his trunk five manuscript books (presumably notes of lectures he had attended) which were necessary for carrying on his studies after he got there. No one of them "exceeded $100 in value." Judge Shipman held as follows:

"Now it may safely be said that books constitute to some extent a part of the baggage of every intelligent traveler. Especially is this the case with scholars, students, and members of the learned professions. There is no reason why they should not be under the protection of the law, as against the negligence of carriers, as well as any other portions of their baggage. But it is said that no case can be shown where the carrier has been held liable for manuscripts. No such case has been cited, and in my researches I have found none. But I see no reason for adopting a rule by which they should be excluded, under all circumstances, from the list of articles termed 'baggage.' With the lawyer going to a distant place to attend court, with the author proceeding to his publishers, with the lecturer traveling to the place where his engagement is to be fulfilled, manuscripts often form, though a small, yet an indispensable, part of his baggage. They are carried, as such, in his trunk, or portmanteau, among his other necessary effects. They are indispensable to the object of his journey; and, as they are carried with his baggage, in accordance with universal custom, I see no reason why they should not be deemed as necessary a part of his baggage as his novel or his fishing tackle. In the present case, the manuscript books lost are admitted to have been necessary articles for the student at the institution to which he was proceeding. They must, under all circumstances, be deemed to have been a part of his baggage, for which the defendants are liable."

We cannot agree with the respondent's counsel that this opinion, which was cited on the argument in Hannibal R. R. v. Swift, supra, was overruled by the decision in that case. The army surgeon whose surgical instruments were allowed as baggage had also in his trunk an unpublished treatise on veterinary surgery. Its value was disallowed in the court below, and no appeal was taken from such disallowance. All that the Supreme Court says about it is that "the value of the unpublished treatise was excluded in the amount allowed" below.

We think that, under the authorities, a manuscript such as this, which is used by a teacher when giving instruction to pupils, may be fairly considered as one of his tools of trade, and as such properly included with his baggage. There is no suggestion in Hannibal R. R. v. Swift that the treatise on veterinary surgery was used for any such purpose.

[3] We are of the opinion that the value which the libelant puts upon the manuscript, $5,000, is unreasonable, and that it would be an imposition upon the carrier to exact any such as compensation for its loss. Since the original has disappeared, and could not be exhibited to witnesses who might be called to testify to its value, it is not at all likely that any further enlightenment would be obtained from a reference as to such value. The author has testified to the time it would take to reproduce it, and we have evidence from which we can form an opinion as to the value of such time. The "two years" he spoke of does not, we think, mean two years of continuous work. We have all that a jury would have upon which to assess value, and our conclusion must be, as a jury's frequently is, somewhat arbitrary.

This being an admiralty case, and the hearing before us a new trial, we have probably all the essential facts which would be produced before a commissioner, were a reference ordered to ascertain the value. Such a reference would entail additional expense, without corresponding advantage. Professors of Greek might be called as witnesses, and asked hypothetical questions as to the value of the manuscript as described by the libelant. That they would disagree may be taken for granted, and the court would be left in substantially the same predicament as at present with no definite criteria as to value.

The case in this respect is sui generis. The lost manuscript is unique in its isolation. There is nothing with which to compare it. In these circumstances, believing that there are certain limits, in each direction, beyond which we should not go, we deem it for the best interests of the parties that the amount of the recovery should be fixed without further expense to the litigants, and we fix $500 as a fair award for the lost manuscript.

This conclusion is concurred in by a majority only of the court. The writer is of the opinion that recovery should be only for what it would have cost to make a copy of the manuscript, upon the theory that it was an imposition on the carrier to place this unique and valuable manuscript among the passenger's baggage as a "tool," when

he could have carried with him a tool quite as serviceable in the shape of a copy.

The decree of the District Court is modified accordingly, and, as modified, is affirmed, with costs to the appellant.