Argued September 24, affirmed October 19, 1920.

## HAMILTON *v.* BAGGAGE & OMNIBUS TRANSFER CO.*

(192 Pac. 1058.)

**Carriers—Owner of Trunk not Delivered by Transfer Company had Election of Remedies.**

1. On failure of a baggage transfer company to deliver her trunk, of which it had possession as bailee, the owner had an election of remedies, having been entitled to sue on the theory the action should be treated as in *assumpsit* for breach of contract, or as an action in case for negligence, or, if there had been a conversion of the goods, as an action in trover for the conversion.

**Appeal and Error—Defendant, not Objecting to Theory of Action Below, cannot Obtain Review on Different Theory.**

2. Where plaintiff, owner of a trunk not delivered, tried her case against defendant transfer company on the theory the action was in *assumpsit*, and defendant transfer company did not ask that plaintiff be required to declare her election between trover and *assumpsit*, it cannot claim on its appeal that the action must be treated as one in trover rather than in *assumpsit*.

**Pleading—Complaint in Assumpsit, but Embracing Allegations Proper to Trover, Aided by Judgment.**

3. Amended complaint of owner of trunk not delivered against transfer company for the loss, though vulnerable to motion or demurrer as embracing allegations sufficient to sustain an action in trover, while intended to be brought on the theory of *assumpsit*,

---

*On the question as to whether articles intended as gifts is baggage for which carrier is responsible, see note in 21 L. R. A. (N. S.) 850.

As to whether books and manuscript is baggage for which carrier may be held liable, see note in 41 L. R. A. (N. S.) 371.

REPORTER.

*held* sufficient after judgment to support the judgment rendered on the theory the action was in *assumpsit*.

**Carriers—Transfer Company Liable in Assumpsit for Negligent Theft, Misdelivery, or Other Loss.**

4. Whether plaintiff's trunk was stolen from, misdelivered or otherwise lost by defendant transfer company, bailee, the company is liable in an action in the nature of *assumpsit* if the loss was caused by its negligence.

**Carriers—Burden of Proof as to Negligent Loss on Owner of Trunk.**

5. The burden of proof as to negligence was on plaintiff owner of a trunk suing defendant transfer company, as bailee, for its loss and consequent failure to deliver.

**Carriers—Bailor of Trunk With Transfer Company not Bound as Matter of Law by Unknown Terms of Mere Token Check.**

6. Bailor of trunk with transfer company *held* not, as a matter of law, bound by the unknown terms in fine print on a small pasteboard check reasonably understood by her to be a mere voucher or. token for identification of the trunk, and accepted as such by her without objection.

**Carriers—Whether Article is Baggage is Question of Mixed Law and Fact.**

7. The question as to whether a given article of property both as to quantity and as to value is baggage is necessarily one of mixed law and fact, to be determined by the trier or triers of the facts under proper instruction, subject to the power of the court to correct abuse.

[What constitutes baggage, see notes in 99 **Am. St. Rep.** 347; 21 **Ann. Cas.** 729.]

**Carriers—Articles Which cannot he Held not Baggage as Matter of Law Enumerated.**

8. Articles carried by plaintiff in trunk lost in possession of defendant transfer company, consisting of a basket, needles, operaglasses, thrift stamps, linens, photographs, etc., cannot be held not baggage as matter of law.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.

Clara Hamilton, the plaintiff, traveled by railroad from Sheridan, Wyoming, to Portland, Oregon. Her husband was in the United States Army. Whenever he was transferred from one post to another, she moved with him. Because of one of such transfers from the east to the west she came to Portland. Upon her arrival in Portland she delivered to M. E.

Norcross a railroad baggage check for a trunk which she had checked from Sheridan to Portland. She directed Norcross to deliver the check to some storage company, and to have the storage company store the trunk until she should call for it. Norcross delivered the railroad baggage check to the defendant, Baggage & Omnibus Transfer Company, a corporation engaged in the business of transferring and storing baggage; and the defendant in turn gave to Norcross its check as evidence that the defendant had possession of the trunk. Norcross explained to the defendant that the plaintiff "wanted her trunk stored for an indefinite period, until she called for it." The defendant admits that it received the trunk from the carrier, and that the trunk was brought to the company's warehouse and storeroom.

The plaintiff, immediately after her arrival in Portland, left for Seaside, where she remained about six weeks before returning to Portland. When the plaintiff returned to Portland, Norcross delivered to her the check that he had received from the defendant. The plaintiff kept the check "several days" and then called upon the defendant to deliver the trunk to her. The officers of the defendant "made search" for the trunk, "but were unable to locate" it, and, "after making such unsuccessful search," the officers of the defendant stated to the plaintiff that "they were of the opinion" that the trunk had been stolen.

The plaintiff began this action in the District Court for Multnomah County to recover $292, the alleged value of the trunk and its contents. She obtained a judgment for $292 in the District Court, and thereafter the defendant appealed to the Circuit Court, where for the second time the plaintiff was

awarded a judgment for $292; and a second appeal by the defendant has brought the controversy to this court. The trial in the Circuit Court was, with the consent of the parties, without the intervention of a jury.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. W. H. Bard, Mr. Ralph E. Moody* and *Mr. James E. Fenton,* with an oral argument by *Mr. Bard.*

For respondent there was a brief over the name of *Messrs. Bronaugh & Carter,* with an oral argument by *Mr. J. E. Bronaugh.*

HARRIS, J.—The defendant claims that the evidence shows that the trunk was stolen. The defendant admits that it received and stored the trunk in its warehouse. There is nothing to indicate that the trunk was stolen, except the fact that when the plaintiff called for the trunk the defendant searched for it, but could not find it, and the further circumstance that the company kept a watchman in the warehouse.

The defendant contends that because of language employed in the amended complaint the action must be held to be an action in trover, and that therefore the plaintiff cannot prevail if the trunk was stolen, even though the defendant was negligent. The plaintiff asseverates that the action is not in trover, but is in *assumpsit* on a bailment contract.

1-4. Upon the failure of the defendant to deliver the trunk, the plaintiff had an election of remedies; for she was entitled to sue and frame her complaint on the theory that the action should be treated as the equivalent of a common-law action in *assumpsit* for a breach of the contract, or as an action in case for negligence, or, if there was a conversion of the goods, as an action in trover for the conversion:

*Hackney* v. *Perry,* 152 Ala. 626 (44 South. 1029); 6 C. J. 1152, 1153. The amended complaint alleges the contract of bailment and its breach, and in addition avers that the defendant "has converted the trunk and contents to its own use." The plaintiff tried the cause on the theory that the action was in *assumpsit,* and evidently the Circuit Court decided it on the same theory. The defendant did not at any time ask that the plaintiff be required to declare her election between trover and *assumpsit.* In this situation the defendant cannot now claim that the action must be treated as one in trover rather than in *assumpsit.* We have therefore viewed the action as one which has been prosecuted and tried in *assumpsit* rather than in trover, although the allegations of the complaint are sufficient to sustain an action in trover. Assuming, without deciding, that the complaint would have been vulnerable to a motion or a demurrer, if either had been filed before trial, nevertheless after judgment the amended complaint is sufficient to support a judgment rendered on the theory that the action is in *assumpsit;* and consequently, whether the trunk was stolen or misdelivered or otherwise lost, the defendant would be liable if the loss was caused by its negligence.

5. It is true that the burden of proof was on the plaintiff; but we think that the plaintiff has complied with the requirements of *Hansen* v. *Oregon-Washington R. & Nav. Co., ante,* p. 190 (188 Pac. 963, 191 Pac. 655), and that there is substantial evidence to support the conclusion that the defendant was negligent.

The check which the defendant gave to Norcross is labeled on its face "Duplicate Baggage Check." The name of the defendant, its street address in

Portland, its telephone number, and the number of the check are also printed upon the face of the check. On the back of the check are printed the words, "Notice to Passengers," and beneath those words appears in fine print the following language:

"This check is issued to cover traveler's baggage only, consisting of passenger's wearing apparel, and the maximum liability assumed by this company in case of loss or damage is limited to $100, unless a greater value is declared by owner at time of checking and payment made therefor at the rate of 50c for each $100 additional value.

"Receptacles not locked and baggage in damaged condition are accepted at owner's risk of loss of contents by pilfering or otherwise.

"Baggage under this check will be stored free for three days."

The check is 2½ inches by 2¼ inches in size. There is no evidence to indicate that Norcross had knowledge of the fine print, except the mere fact that the check was delivered to him. The plaintiff testified that she had no knowledge of anything on the back of the check "until she saw the same in her attorney's office at the time of the beginning of the case."

It may be assumèd that, as contended by the defendant, the corporation occupied the position of bailee, with the duty of a warehouseman, and that only ordinary care was required of it in the performance of that duty. It may also be assumed that, although the bailee could not have exempted itself by contract from its own negligence (*Pilsen* v. *Tiptop Auto Co.*, 67 Or. 528, 535 [136 Pac. 642]), nevertheless, as argued by the defendant, it was lawful to agree upon the value of the subject matter of the bailment: *Normile* v. *Oregon Nav. Co.*, 41 Or. 177

(69 Pac. 928). The inquiry is narrowed, then, to the question: Did the parties actually or in contemplation of law agree to the conditions printed on the back of the check? The defendant says that they did, while the plaintiff says that they did not so agree. There is a marked difference between the situation created by the acceptance of a paper, which is delivered by one party and received by the other for the primary purpose of evidencing the terms of a contract, and the situation resulting from the acceptance of a check primarily designed as a token by which to identify a given article. If the bailor reads the conditions printed on the check, he is bound; and he is likewise bound if he knows what conditions the check contains, even though he does not read them. If, however, the bailor does not know, and if it cannot be said that by reason of previous dealings or experience, or because of the form, size, or character of the check, or other like circumstances, he ought to have known that the document contained terms limiting liability, then he is not bound. The trial court found as a fact that the plaintiff "did not agree to any terms written on the back of said identification check"; and this finding is equivalent to saying that neither the plaintiff nor her agent agreed to the terms printed on the back of the document.

6. The bailor is not, as a matter of law, bound by the unknown terms of the check by his acceptance of it without objection, where the check consists of a small piece of pasteboard purporting and reasonably understood by him to be a mere voucher or token by which the subject of the bailment is to be identified: 6 C. J. 1112; 13 C. J. 277; *Woodruff* v. *Sherrard,* 9 Hun (N. Y.), 322; *Smith* v. *Hughes,* 63 Misc. Rep. 326 (117 N. Y. Supp. 162); *Healy* v. *New York Cent.*

*& H. R. R. Co.*, 153 App. Div. 516 (138 N. Y. Supp. 287); *Neuman* v. *National Shoe & Leather Exchange,* 26 Misc. Rep. 388 (56 N. Y. Supp. 193). See *Fonseca* v. *Cunard Steamship Co.*, 153 Mass. 553 (27 N. E. 665, 25 Am. St. Rep. 660, 12 L. R. A. 340); *Wood* v. *Cunard Steamship Co.*, 192 Fed. 293 (112 C. C. A. 551, 41 L. R. A. (N. S.) 371).

The corporation next insists that the trunk was received and stored by it as baggage, and that, since the plaintiff did not inform the defendant about the contents of the trunk, it cannot be held liable for any articles not properly classed as baggage. The plaintiff did not inform the defendant of the nature or value of the contents of the trunk, and there were no representations made except such, if any, as were implied by the circumstances. The defendant came into possession of the trunk through a railroad baggage check delivered to it by the plaintiff, and the defendant contends that this fact, together with the attending circumstances, amounted to an implied representation that the trunk contained baggage. Indeed, the voucher given to the plaintiff was called a "duplicate baggage check." We shall assume, without deciding, that the plaintiff can recover the value of such articles only as could properly be classified as baggage if the controversy were one between a carrier and a passenger.

The defendant takes the position that 19 of the articles contained in the trunk were not baggage. These disputed items, with their values, are as follows: Japanese basket, $3.75; aluminum needles, $5; teddy, $1.50; gold and pearl opera-glasses, $25; 3 thrift stamps, $.75; silverware, $8; linens and towels, $7; 1 dozen new photographs, $14; box of jewelry, $10; books, $2; electric iron, $5.50; 2 new leather

diaries, $2.75; 1 pair scissors, $1.25; hand-painted salt and pepper, $1.50; 2 crocheted collars, $5; other crocheted work, $15; pattern books, $1.25·; prayer-book, $1.50; about 30 sheets of music, $9.

The statement has been frequently made that it is not practicable to say with precise accuracy just what the term "baggage" includes: *Oakes* v. *Northern Pac. R. R. Co.,* 20 Or. 392, 395 (26 Pac. 230, 23 Am. St. Rep. 126, 12 L. R. A. 318); *Hawkins* v. *Hoffman,* 6 Hill (N. Y.), 586 (41 Am. Dec. 767); *Johnson* v. *Stone,* 11 Humph. (Tenn.) 419. The difficulty encountered in any attempt to frame a definition which will include all possible articles and exclude all else comes from the fact that, although there is a general rule commonly applied by the courts, a given article may properly be classified as baggage in one case and with like propriety be excluded from that classification in another case. The definition, or generalization rather, usually found in the books, is to the effect that "baggage" includes whatever articles a passenger usually takes with him for his own personal use, comfort and convenience, according to the habits or wants of his class, either with reference to his immediate necessities or to the ultimate purpose of his journey.

Whether or not an article is to be treated as baggage "is to be determined from the character and length of the journey the owner is on, its purposes and objects, his station in life, and the habits and usages of the class of travelers to which he belongs": 10 C. J. 1188. A traveler may carry with him such articles as are fairly and ordinarily necessary to his personal comfort and convenience, both during the journey and for a reasonable time after its termination; and due consideration must be given to the nature of the journey, its immediate necessities, and

its ultimate purpose: *Oakes* v. *Northern Pac. R. R. Co.,* 20 Or. 392 (26 Pac. 230, 23 Am. St. Rep. 126, 12 L. R. A. 318); *Wells* v. *Great Northern Ry. Co.,* 59 Or. 165, 172 (114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818); *Kansas City, Ft. S. & G. R. Co.* v. *Morrison,* 34 Kan. 502 (9 Pac. 225, 55 Am. Rep. 252). An examination of the multitude of precedents, involving as they do a wide variety of cases, will reveal a liberal interpretation and a generous application of the so-called definition of "baggage": *Kansas City S. R. Co.* v. *Skinner,* 88 Ark. 189 (113 S. W. 1019, 21 L. R. A. (N. S.) 850). In *Doyle* v. *Kiser,* 6 Ind. 242, 247, it was said, baggage may include "Clothing, traveling expense money, a few books for the amusement of reading, a watch, a lady's jewelry for dressing, etc."

It has been held that money in a trunk is not baggage; but the weight of authority is that the term "baggage" includes money reasonably necessary and intended for traveling expenses: 10 C. J. 1190.

The term "baggage" has been held to include a reasonable quantity of a watchmaker's tools (*Wells* v. *Great Northern Ry. Co.,* 59 Or. 165 [114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818, 825]); a dress pattern containing twelve yards of cloth, valued at $8.85, purchased en route to take home to a member of the family (*Kansas City S. R. Co.* v. *Skinner,* 88 Ark. 189 [113 S. W. 1019, 21 L. R. A. (N. S.) 850]); a manuscript manual on Greek grammar prepared by a teacher with a view to ultimate publication, but carried about by him to aid in his work of teaching (*Wood* v. *Cunard Steamship Co.,* 192 Fed. 293 [112 C. C. A. 551, 41 L. R. A. (N. S.) 371]); a woman's fancy work and miscellaneous ornaments, a saving's bank and contents, and a zither key (*Railroad Co.* v.

*Baldwin,* 113 Tenn. 205 [81 S. W. 599]); one dozen photographs carried by a passenger returning home (*San Antonio & A. P. Ry. Co.* v. *Green* [Tex. Civ. App., 170 S. W. 110]); a tent in which the owner lived and the blankets in which he slept in pursuance of his business of traveling with fairs, circuses and picnics to operate a shooting-gallery (*Strome* v. *Lusk* [Mo. App., 180 S. W. 27]); a sportsman's gun-case and fishing apparatus (*Hawkins* v. *Hoffman,* 6 Hill [N. Y.], 586 [41 Am. Dec. 767]); an artist's easel (*Merrill* v. *Grinnel,* 30 N. Y. 594); a barber's razors (*Grywacz* v. *New York Cent. & H. R. R. Co.,* 74 Misc. Rep. 343 [134 N. Y. Supp. 209]); a surgeon's instruments (*Hannibal R. R. Co.* v. *Swift,* 79 U. S. 262 [20 L. Ed. 423, see, also, Rose's U. S. Notes]); trunks, bedding, dishes and cutlery carried by passengers contemplating a short sojourn at their destination where they for the time being will keep house, and dishes and cutlery carried by passengers making a permanent change of abode (*House* v. *Chicago etc. R. Co.,* 30 S. D. 321 [138 N. W. 809, Ann. Cas. 1915C, 1045]); opera-glasses and compass (*Cooney* v. *Pullman Palace-Car Co.,* 121 Ala. 368 [25 South. 712, 53 L. R. A. 690]); jewels and other articles of personal adornment (*Pullman Co.* v. *Green,* 128 Ga. 142 [57 S. E. 233, 119 Am. St. Rep. 368, 10 Ann. Cas. 893]; *Hasbrouck* v. *New York C. & H. R. R. Co.,* 202 N. Y. 363 [95 N. E. 808, Ann. Cas. 1912D, 1150, 35 L. R. A. (N. S.) 537]; *Battle* v. *Columbia, Newberry & Laurens R. R.,* 70 S. C. 329 [49 S. E. 849]); opera-glass (*Toledo, Wabash & Western R. R. Co.* v. *Hammond,* 33 Ind. 379 [5 Am. Rep. 221]); a watch (*American Contract Co.* v. *Cross,* 8 Bush [Ky.], 472, [8 Am. Rep. 471]; *Jones* v. *Voorhees,* 10 Ohio, 145); a woman's jewelry, and every article pertaining to her

wardrobe that may be necessary or convenient to her in traveling (*Pullman Co.* v. *Vanderhoeven*, 48 Tex. Civ. App. 414 [107 S. W. 147]).

7. The question as to whether a given article of property, both as to quantity and as to value, subject, of course, to the power of the court to correct any abuse, is necessarily one of mixed law and fact to be determined by the trier or triers of the facts under proper instructions, for each case is largely dependent upon the accompanying circumstances: *Oakes* v. *Northern Pac. R. R. Co.*, 20 Or. 392, 397 (26 Pac. 230, 23 Am. St. Rep. 126, 12 L. R. A. 318) ; *Sherman* v. *Pullman Co.*, 79 Misc. Rep. 52 (139 N. Y. Supp. 51) ; *Galveston, H. & S. A. Ry. Co.* v. *Fales,* 33 Tex. Civ. App. 457 (77 S. W. 234); *Hubbard* v. *Mobile & Ohio Ry. Co.,* 112 Mo. App. 459 (87 S. W. 52) ; *Doerner* v. *St. Louis & S. F. R. R. Co.,* 149 Mo. App. 170 (130 S. W. 62).

8. We conclude that, in view of all the attending circumstances and the nature, quantity and values of the articles in controversy, we cannot say as a matter of law that any of the articles were not baggage, and that therefore the findings and judgment of the trial court must be affirmed.         AFFIRMED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.