Submitted on briefs March 14, affirmed November 20, rehearing
denied December 18, 1928.

# MAHALA PIERCE *v.* NORTHERN PACIFIC RAILWAY COMPANY.

(271 Pac. 976.)

For appellant there was a brief over the names of *Mr. George T. Reid, Mr. L. B. DaPonte* and *Messrs. Carey & Kerr.*

For respondent there was a brief over the names of *Mr. Clarence H. Gilbert* and *Mr. William Davis.*

COSHOW, J.—There was evidence introduced tending to support the contention of plaintiff to the effect that the contract between her as made for her by her son and the defendant is not embodied in the receipt. The evidence of Mr. States to that effect is positive and is corroborated to a large degree by the letter of defendant to Mr. States, reading as follows:

"Referring to your call at this office on October 15th and arrangement made for delivery of ticket and berth to Mrs. Mahala Pierce at Elmira, New York:

"I am advised that delivery of ticket and berth has been made to Mrs. Pierce and that she left Elmira yesterday the 22nd on D. L. & W. Train No. 15.

"That was as you desired and she should arrive in Stevenson on October 26th at 4:47 A. M.

"I beg to again thank you for this ticket order.
"Yours very truly,
"A. D. CHARLTON,
"HGS., G. P. A."

It clearly appears, we think, from this letter and the testimony that defendant undertook to deliver a Pullman ticket to plaintiff. It is admitted that this was not done. In its brief it asserts reservation for Pullman accommodations was reserved from Buffalo to Stevenson. The evidence justified the jury in finding that the agent of defendant selected to perform its undertaking with plaintiff not only neglected to provide the ticket, but neglected to explain to plaintiff that she should purchase a Pullman ticket at Buffalo, which defendant contends was her duty to do. The fact that the price of Pullman service from Buffalo to Stevenson was returned to said States by plaintiff is persuasive evidence that defendant failed to perform its duty to her.

■ Defendant has cited a long list of authorities to support its contention that the receipt expresses the entire contract between the parties. We do not think these authorities go to that extent. Where the receipt embodies a contract between the parties, that contract cannot be varied by oral testimony any more than any other written contract can, but an ordinary receipt not signed by both parties is not always a contract: *Hirsch* v. *Salem Mills Co.,* 40 Or. 601 (67 Pac. 949, 68 Pac. 733); *Rader* v. *McElvane,* 21 Or. 56 (27 Pac. 97); *Bouchet* v. *Oregon Motor Car Co.,* 78 Or. 230 (152 Pac. 888); *McCargar* v. *Wiley,* 112 Or. 215, 257 (229 Pac. 665); *Hamilton* v. *B. & O. Transfer Co.,* 97 Or. 620 (192 Pac. 1058); 22 C. J. 1135, § 1520; 9 Ency. of Ev. 477, § c.

To the same purport are the following authorities cited by appellant: 13 C. J. 305; *Taylor* v. *Weir,* 162 Fed. 585; *Mears* v. *New York, N. H. & H. R. Co.,* 75 Conn. 171 (52 Atl. 610, 96 Am. St. Rep. 192, 56

L. R. A. 884); *Grace* v. *Adams*, 100 Mass. 505, 509 (97 Am. Dec. 117, 1 Am. Rep. 131).

■ Defendant could lawfully contract to perform this service for plaintiff, notwithstanding it was to be performed beyond its lines and by the employee of an independent railroad company. It is for the mutual benefit of the different railroad companies as well as the public for railroad companies to exchange such accommodations and service as were undertaken by defendant in the instant case.

In the transportation of freight under a federal statute, the initial carrier of connecting lines is responsible for the delivery of freight beyond its lines. In the service undertaken to be performed by defendant for plaintiff, no discrimination was shown. It was such service as railroads generally undertake as common carriers: *Atlantic Co.* v. *Riverside Mills,* 219 U. S. 186 (55 L. Ed. 167, 31 Sup. Ct. Rep. 164, 31 L. R. A. (N. S.) 7, and extensive note beginning at page 1 of 31 L. R. A).

Most of the authorities cited by defendant relate to shipments of freight where a rate is given the shipper based upon the valuation of the goods shipped. These cases are well illustrated by *Wells Fargo & Co.* v. *Nieman-Marcus Co.*, 227 U. S. 469 (57 L. Ed. 601, 33 Sup. Ct. Rep. 267).

■ The motion for nonsuit presented by defendant was based upon its contention that the receipt expressed the entire contract between the parties and under it plaintiff cannot recover. From what we have written defendant's contention is unsound. The court did not err in denying the motion for a nonsuit. We believe the court correctly expressed the law in the instruction hereinbefore set out in full and upon which defendant bases its principal error. The in-

struction is more favorable to defendant than to plaintiff. The ground assigned by defendant for basing error on said instruction is:

"It authorized the jury to find that the written contract was not the entire contract and authorized the jury to find against defendant if they should believe that said written contract was not the entire contract, and excepted to said instruction for telling the jury that the printed portion of said contract would not be binding on plaintiff unless known and assented to by Mr. States."

We think that this instruction follows the opinion in *Hirsch* v. *Salem Mills Co.*, above, where the court used this language:

"A receipt issued by a warehouseman and accepted by the owner of the commodity stored, as expressing the terms and conditions upon which it was delivered and received, is a contract, and, like all other written contracts, cannot be contradicted or varied by parol * * ; but when the receipt is silent as to the terms of the contract, it may be shown by parol (*State* v. *Stockman*, 30 Or. 36 (46 Pac. 851); and when its language is ambiguous and uncertain, it must, like any other contract, be interpreted in the light of the surrounding circumstances, * * ." Or. L., § 717.

For the purpose of construing a contract our statute thus defines the duty of the court:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." Or. L., § 715.

Our statute also prescribes:

"When an instrument consists partly of written words and partly of a printed form, and the two are inconsistent, the former controls the latter." Or. L., § 719.

We are further required by our statute:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." Or. L., § 717.

■ ■ Another rule enacted by the legislature requires the contract when ambiguous or uncertain to be construed in favor of the party in whose favor the provision was made: Or. L., § 721. Applying these rules we must give preference to the word "berth" written over the printed word "cash." The contract was made for the benefit of plaintiff. While she did not sign the contract she is in a real sense a party thereto. She was old and inexperienced in traveling. Her son desired to have her come across the continent in comfort. Because of her lack of experience in traveling he requested the defendant to provide a berth for her on the Pullman. There was no reason at all for writing the word "berth" in the receipt unless it was the intention of the parties that a berth should be provided. If the contract could be fulfilled by delivering the cash, why insert the word "berth"? The court would exceed its authority under our statute if it ignored the word "berth" or tried to add to the contract in the receipt or take therefrom something that the parties put in there. The defendant prepared the receipt including the contract: Or. L., § 721. Defendant must have

intended to procure a berth for plaintiff when it inserted the word "berth" in the contract. That is another reason for construing the contract to mean that the company undertook to furnish a berth, not simply the cash with which to purchase a berth.

The testimony is conflicting about the contract between States and defendant. States testified positively that he did not understand the receipt to constitute a contract. He did not sign it, nor was his attention directed to the printed matter in the receipt. He paid defendant the money and accepted the receipt solely as evidence of that payment. It would be giving to such a receipt, as appears in the instant case, too great importance in our judgment to hold that it expressed the entire contract between the parties in the light of the record.

The letter from defendant and quoted above is convincing evidence defendant understood it was to provide a ticket for a berth. That letter shows the sense in which defendant understood its obligation to plaintiff. Defendant undertook, according to the testimony which was believed by the jury and which we must accept as being true, to provide Pullman accommodations for plaintiff. The letter of defendant to Mr. States corroborates that testimony. It is not against law or public policy for defendant to have agreed to perform that service. It does not violate any of the regulations of interstate commerce because it does not constitute discrimination of any kind. It is a service generally and daily performed by railroad companies throughout the entire United States.

■ ■ It is contended by defendant that since plaintiff did not complain but accepted such accommodations as were provided for her she is bound by her

election and cannot recover: *Hollen* v. *L. & N. R. Co.*, 209 Ky. 287 (272 S. W. 740, 42 A. L. R. 155); 17 C. J. 926, 927, § 224.

It was the duty of defendant to extend to plaintiff proper care under the circumstances. She was an old lady within the knowledge of defendant when it undertook the service.

"The aged and crippled cannot be refused service, although to some degree special care must be taken. The right of passenger carriage is not confined to persons who are vigorous and sound, but is open to those ailing and infirm." 1 Wyman, Public Service Corp., § 635.

According to defendant's testimony and claim, it was intended that plaintiff should ride in a day coach from Elmira to Buffalo. She was not accompanied by any person and doubtless felt her inability to protect herself. In fact, the party upon whom defendant relied to perform its undertaking did not explain to her that she was to purchase a Pullman ticket at Buffalo. She had a right to believe that defendant would perform its duty which it had promised her son to do. As she herself testified she was tired and worn and did not know what to do. If she had been capable of looking after herself under the circumstances there would have been no necessity for her to have requested that service from defendant. Her son could have either transmitted the money or the ticket to her directly if the services of defendant had not been required to assist her in the estimation of her son.

 Defendant complains that the verdict is so large that it is apparently the result of passion and prejudice. The testimony indicates without question that plaintiff was worn out when she arrived at

Stevenson and was ill for quite a period of time. She was humiliated by passengers discovering her predicament and in their kindness assisted her by purchasing a sleeper for her the last night she was on the train. We believe the verdict to be large, but do not believe we are authorized under the provisions of our Constitution to interfere. The case was fairly presented to the jury and the jury is the sole judge of the facts: Const., Art. VII, § 3c.

We have examined the instructions requested by defendant and refused by the court. These instructions intended to shift to others the service undertaken by defendant. Defendant was not entitled to the instructions requested and refused.

The judgment is affirmed. AFFIRMED.

McBRIDE, BEAN and BROWN, JJ., concur.

RAND, C. J., Dissenting.—This is an appeal from a judgment for the sum of $2,500 which was awarded to plaintiff as damages because of defendant's alleged failure to furnish plaintiff with Pullman car transportation from Elmira, New York, to Stevenson, Washington.

At the time of the transaction complained of plaintiff was residing near Elmira in the State of New York and R. W. States, her son, was a resident of the State of Washington. In order to furnish transportation to his mother from Elmira, New York, to his home in the State of Washington, States went to the ticket office of the defendant at Portland, Oregon, and deposited with its ticket agent the sum of $129.28 in money and at the same time took and received of said agent a writing of which the following is a copy:

"No. 9242. Portland, Oct. 15, '23.

"Received from W. R. States—Stevenson, Wn. One Hundred Twenty-nine 28 Dollars ($129.28) for one (1) Ticket and $29.26 berth Cash, to be furnished Mrs. Mahala Pierce at —— From Elmira, N. Y. To Stevenson, Wn. Via D L & W–N Y C & S. L–Q–NP–S P & S.

"*Sleeper Buffalo to Stevenson.*

"It is expressly understood that in the delivering of tickets, or tickets and cash, the Northern Pacific Railway does so only as an accommodation to the depositor without compensation, and is not liable, beyond return of the amount deposited, for damage from delay or failure to deliver.

"A. D. CHARLTON,
"By HGS., Ticket Agent."

It is admitted that, pursuant to the provisions of the writing referred to, as plaintiff was about to take the train at Elmira, New York, the ticket agent at that place delivered to her a through railroad ticket from Elmira to Stevenson, Washington, over the lines designated in the writing, and it is also admitted that at the same time he delivered to her the sum of $29.26 in money, and that said sum of $29.26 is the amount of the regularly established Pullman rates from Buffalo to Stevenson, and that instead of keeping the $29.26 and using the same on arrival at Buffalo in purchasing Pullman accommodations from Buffalo to Stevenson, as she could have done, plaintiff gave the money to her daughter, who accompanied her to the train, and the daughter forwarded the same to States at Stevenson. Plaintiff's own testimony shows that after the $29.26 had been delivered to her daughter she did not have sufficient money with her to purchase Pullman transportation between Buffalo and Stevenson, and, for that reason, was unable to

obtain Pullman accommodations during most, if not all, of the trip from Buffalo to Stevenson.

The evidence shows, and it is undisputed, that the cost of a railroad ticket from Elmira, New York, to Stevenson, Washington, and Pullman car accommodations from Buffalo, New York, to Stevenson, Washington, amounts to the sum of $129.28.

The complaint contained no reference whatever to the writing but alleged that defendant had contracted with States for the delivery to plaintiff at Elmira of a through railroad ticket and Pullman tickets which would entitle her to ride in standard Pullman cars from Elmira to Stevenson, and alleged that plaintiff, who was of advanced age, had been compelled, by defendant's breach of its contract in failing to deliver such Pullman tickets to her at Elmira, to ride in day coaches to her damage in the sum of $2,500.

The answer set up the written contract and alleged a compliance by defendant with its terms as a defense to the action. Other defensive matters were alleged which will be considered later. The reply consisted of denials only and denied the execution of the contract and all of the other allegations of the answer. There was no allegation of fraud or deceit in the pleadings nor suggestion thereof in the evidence. Upon the trial the court took the view that the writing was a mere receipt which could be contradicted by parol and over defendant's objection and exception, admitted in evidence the parol testimony of States tending to show that defendant's ticket agent, at the time of the execution of the writing, had orally contracted with States to deliver to plaintiff Pullman tickets at Elmira, New York, and submitted to the jury the question of whether such an alleged oral

contract had been entered into at said time. The court also instructed the jury as follows:

" * * if you find that the written receipt referred to does not embody all of the terms of the contract entered into between the parties, then you may consider the testimony of Mr. States for the purpose of varying or adding to the terms and conditions stated in the receipt."

The court also instructed the jury to the effect that, if it should find that the writing did not contain all the terms of the contract then it had the right to find that the defendant had contracted to furnish Pullman tickets to plaintiff and for its failure to furnish such tickets it could find for plaintiff in such sum as it should find that she had been damaged thereby. The court also instructed the jury, in effect, that if it found that the printed portion of the writing was not known to and assented to by States, the limitation of liability contained in the writing would not be binding upon plaintiff.

The mere reading of the writing alone will show that it is both a receipt and a contract. It acknowledges the payment and delivery of a certain sum of money. To that extent only it is not a contract but a receipt and, as such, is only *prima facie* evidence of the facts stated. As to such facts, the writing itself was not conclusive evidence and, hence, in respect thereto, either party, in the absence of an estoppel, could contradict that part of the writing by parol. But in so far as the writing states what shall be done with the money, it is a contract and, in that respect, like all other contracts in writing, it cannot be contradicted or varied by parol. As stated in 1 Greenleaf on Evidence (16 ed.), Section 305:

"In regard to receipts, it is to be noted that they may be either mere acknowledgments of payment or

delivery, or they may also contain a contract to do something in relation to the thing delivered. In the former case, and so far as the receipt goes only to acknowledge payment or delivery, it is merely *prima facie* evidence of the fact, and not conclusive; and therefore the fact which it recites may be contradicted by oral testimony. But in so far as it is evidence of a contract between the parties, it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol.''

This written contract was prepared by filling in the blank spaces contained in what is designated in the writing as Form No. 1361. This is the form used by the defendant carrier where money is deposited with it to purchase railroad transportation for some person at another place. It contains both blank spaces and printed matter. The blank spaces to be filled in were to designate the place and date of deposit, the name of the party making the deposit, the amount deposited, the number of tickets and the amount of cash to be furnished, the name of the person to whom the same were to be furnished, and the names of the points between which and the lines over which the transportation was to be furnished. As filled in it constituted the writing copied above and was both a receipt for the money deposited and a contract to furnish the specified transportation and was signed by the defendant carrier. It is undisputed that a copy of the writing was delivered to States, who retained it and made no objection to any provisions contained in it. It was error, therefore, for the court to instruct the jury that the limitation of liability of the defendant expressed in the writing was not binding upon the plaintiff unless the printed portion of the writing was known to and assented to by States. The fact that the writing was signed by the carrier only was of no importance. There was a

privity of contract existing between States and plaintiff. It is settled law that:

"The acceptance of a paper which purports to be a contract sufficiently indicates an assent to its terms whatever they may be, and it is immaterial that they are, in fact, unknown. * * And any writing signed by one party and orally assented to by the other binds both, except so far as the Statute of Frauds provides the contrary. Indeed any written contract though signed by one party only, binds the other if he accepts the writing." 1 Williston on Contracts, § 90a.

In *Hamilton* v. *Baggage & Omnibus Transfer Co.,* 97 Or. 620 (192 Pac. 1058), a case relied upon by plaintiff, the distinction between the acceptance of a paper which purports to be a contract and the acceptance of a paper which is intended to create a mere bailment only was recognized. In that case the question was whether the acceptance of a baggage check having conditions printed on the back thereof by a bailor who had no knowledge of such conditions was bound by them and it was held that, unless he had knowledge or notice of such conditions, or because of his experience in transactions of that nature he should have known of them, he was not bound by the conditions. That rule has no application to the acceptance of a paper containing the terms of a contract. Where a party enters into contractual relations with another and receives from such person a paper which he knows is to constitute the contract between them, his acceptance thereof without objection upon his part indicates his assent to the terms stated in the contract and it is immaterial whether he knows what the terms are or not.

By one of the terms expressed in the written contract, defendant was obligated to furnish plaintiff

at Elmira, New York, with "one ticket and $29.26 berth cash." This was done in exact conformity to the conditions contained in the writing, and that it was done was admitted upon the trial. If parol evidence was admissible to prove in contradiction of this writing that the defendant had orally contracted to furnish plaintiff with Pullman tickets and not $29.26 berth cash, as stated in the contract, then parol evidence would be admissible to prove that defendant was not to furnish either tickets or cash, but had orally agreed to use the money for some entirely different purpose than that stated in the written contract. If this could be done in this case, then there would be no security in written contracts and no one would take the trouble to have his contracts put in writing. As said by the author in 3 Jones' Commentaries on Evidence, Section 434:

" * * When parties sign a memorandum expressing all the terms essential to a complete agreement, they are to be protected against both the doubtful veracity of interested witnesses and the uncertain memory of the disinterested concerning the terms of their agreement. And the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing."

The same principle is more fully stated by the distinguished author in 1 Greenleaf on Evidence (16 ed.), Section 275, as follows:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversa-

tion or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected."

It should be borne in mind that the rule "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument" is not merely a rule of evidence but is a rule of substantive law. The word "parol" as used in this connection does not mean oral testimony only but may include "written material as well as conversations, circumstances, and oral matter in general." See 1 Greenleaf on Evidence (16 ed.), § 305a, subd. 2.

In support of plaintiff's contention that parol evidence was admissible to contradict the express terms contained in the written contract, a letter written to States by Charlton, the agent of the defendant, under date of October 23, 1923, was offered by plaintiff and received in evidence. This letter reads as follows:

"Referring to your call at this office on October 15th and arrangement made for delivery of ticket and berth to Mrs. Mahala Pierce at Elmira, New York;

"I am advised that delivery of ticket and berth has been made to Mrs. Pierce and that she left Elmira yesterday the 22nd on D. L. & W. Train No. 15.

"That was as you desired and she should arrive in Stevenson on October 26th at 4:47 A. M.

"I beg to again thank you for this ticket order.
"Yours very truly,
"A. D. CHARLTON,
"HGS, G. P. A."

Whether this letter was admissible upon some other question in the case it is not necessary for us to consider but it was not admissible for the purpose of contradicting, varying, adding to or subtracting

from the terms of the written contract. It contained no contractual language and was a mere narration of a past event. It could, therefore, create no new contract or any other or different relation than that already existing between the parties. At the time the letter was written the written contract was a valid subsisting contract which had been performed according to its terms by the delivery of the ticket and cash to plaintiff. None of the terms of the written contract were ambiguous or doubtful in meaning. It spoke, therefore, for itself and entitled each of the contracting parties to exact performance according to its terms, and when performed according to its terms by the defendant and its connecting carriers the defendant was released from any further liability under the contract.

It was plaintiff's contention that the transaction was only partially reduced to writing and did not contain all the terms orally agreed upon between the parties. Where the original contract was verbal and entire and a part only of it has been reduced to writing, the terms omitted from the writing, if material, may be shown by parol, but that rule was not applicable under the facts of this case. There was no allegation in the complaint or in the reply that any term of the contract had not been reduced to writing. What was claimed to have been omitted from the written contract was the alleged oral promise to deliver plaintiff Pullman tickets and not berth cash. The writing, however, provided that berth cash should be delivered to plaintiff and this excluded the delivery of Pullman tickets, since it is not contended that both cash and Pullman tickets were to be delivered. But even if plaintiff had been entitled to show that the writing was incomplete and that one or more

of the terms thereof had been omitted, yet the writing was conclusive as far as it goes. The rule applicable to such case is "where a writing, although embodying an agreement, is manifestly incomplete, and is not intended by the parties to exhibit the whole agreement, but only to define some of its terms, the writing is conclusive as far as it goes." 3 Jones' Commentaries on Evidence, § 440. The writing, therefore, was conclusive upon the question of whether the thing to be furnished was to be berth cash or Pullman tickets and this could not be disputed by a mere letter, containing no contractual language whatever, written subsequently, or by the parol testimony of the party with whom the written contract was made. According to all of the testimony, both that of plaintiff and defendant, the written contract has been performed according to its terms.

For these reasons the judgment should be reversed and the cause remanded, with directions to dismiss the action.

BELT and ROSSMAN, JJ., concurring.